COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

**PUBLISHED**

ROY LEESHUN WILLIAMS

v.      Record No. 0603-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
JANUARY 14, 2020

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge Designate[1]

Morgan L. Faulkner, Assistant Public Defender, for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General; David M. Uberman, Assistant Attorney
General, on brief), for appellee.

Roy Leeshun Williams appeals his convictions for receiving a stolen firearm and

possession of marijuana, subsequent offense, in violation of Code §§ 18.2-108.1 and -250.1. He

argues that the trial court erred by denying his motion to suppress. He also contends that the

evidence was insufficient to support the firearm conviction. Last, he argues that the trial court

erroneously admitted evidence regarding a marijuana field test. For the reasons that follow, we

affirm the conviction for receiving a stolen firearm, but we reverse the conviction for possession

of marijuana and remand for a new trial on that offense should the Commonwealth be so

advised.

---

[1] While the final orders in this case were signed by Judge Designate Spencer, Judge
Phillip L. Hairston presided over the suppression hearing.

## I. BACKGROUND[2]

On November 19, 2016, around 8:30 p.m., Sergeant Jonathan Nathanson, with the City of Richmond Police Department, conducted a traffic stop of the appellant's vehicle. He stopped the car after seeing it traveling faster than the posted speed limit and swerving "in and out of the lane."

During the encounter, the sergeant asked the appellant whether he had any firearms in the car. The appellant replied that he had a concealed weapons permit. Sergeant Nathanson asked at least four times where the firearm was located. Each time, the appellant responded vaguely that it was concealed. As they conversed, a large unrestrained dog "rov[ed] the vehicle freely."

The sergeant returned to his police car to write two summonses. It took him approximately sixteen to eighteen minutes to complete them. While he was processing the summonses, he called for assistance, and two other police officers responded to his location. One of the responding officers recognized the appellant from a previous "assault issue" and told Nathanson that the appellant had "some type of firearms violation prior."

Sergeant Nathanson went back to the appellant's car and asked him to get out of the vehicle. The reason for the request was to avoid the dog in the car and to observe the appellant's motor skills. After Nathanson repeated the request multiple times, the appellant complied. As soon as he got out of the car, Sergeant Nathanson saw a handgun inside the appellant's open jacket. The gun was "one of the bigger revolvers [Nathanson had] ever seen."

Immediately, Nathanson placed the appellant in investigative detention. The appellant said that the gun belonged to him. The sergeant seized it for safety purposes.

---

[2] Under the applicable standard of review, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party below. See Hill v. Commonwealth, 297 Va. 804, 808 (2019) (motion to suppress); Butcher v. Commonwealth, 69 Va. App. 406, 412 (2018) (sufficiency); Pierce v. Commonwealth, 50 Va. App. 609, 612 (2007) (admission of evidence).

Within moments of seizing the firearm, Sergeant Nathanson noticed the odor of unburned marijuana coming from the appellant. He asked the appellant whether he had marijuana, and the appellant said that he did not. The sergeant found a small bag of "green leaf like substance" on the appellant's person that he believed to be marijuana.

Nathanson ran a search in the state firearms database for the gun's serial number. In the course of doing so, he learned that it had been stolen from an individual's home on July 8, 2015. When Nathanson informed the appellant that the gun was stolen, the appellant did not seem surprised, yet he said that he did not know that it was stolen. Nathanson asked where he had gotten the gun, and all the appellant would say was that he had bought it from "a person." In addition, when Nathanson told the appellant that he was under arrest, the appellant said that the case "would get lost in court, and that he had been stopped for a stolen firearm before and [had] not [been] arrested at that time."

Nathanson conducted a field test on the leafy material to determine whether it was marijuana. The material tested positive for THC, an ingredient in marijuana. At trial, the appellant objected to the admission of the result of the field test, but the trial court overruled the objection.

Sergeant Nathanson described the circumstances surrounding the stop itself. According to him, the encounter lasted "no longer than what it took . . . to get all the documentation together." He additionally stated that "run[ning] the serial number" on the gun took him only a very short time, less than thirty seconds. He explained that the traffic stop may have taken ten minutes longer than normal because he had to "deal with a dog . . . [and a] firearm." He estimated that the entire encounter lasted about thirty minutes.

- 3 -

Before trial, the appellant filed a motion to suppress the evidence obtained from the search of his person and the firearm. After hearing argument and testimony, the trial court denied the motion.

The appellant was tried before a jury. After the close of the Commonwealth's evidence, the appellant made a motion to strike the charge of receiving a stolen firearm. He argued, in pertinent part, that the Commonwealth failed to prove that he knew that the gun was stolen. The trial court denied the motion to strike.

The jury found the appellant guilty of receiving a stolen firearm and possession of marijuana, subsequent offense. He was sentenced to one year of incarceration for the firearm conviction and was fined as a result of the marijuana conviction.

## II. ANALYSIS

The appellant argues that the trial court erred in denying his motion to suppress. He also contends that the evidence was insufficient to prove that he knew that the firearm in his possession was stolen. Finally, the appellant suggests that it was error for the court to admit the result of the marijuana field test into evidence.

### A. Motion to Suppress

The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred. Glenn v. Commonwealth, 275 Va. 123, 130 (2008). At this juncture, the Court considers the evidence in the light most favorable to the Commonwealth and affords it the benefit of all inferences fairly deducible from that evidence. Hill v. Commonwealth, 297 Va. 804, 808 (2019). Moreover, our review includes evidence presented at both the suppression hearing and the trial. Id.

This Court is "bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them." Matthews v. Commonwealth, 65 Va. App. 334, 341

- 4 -

(2015) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)). "This standard [also] requires us 'to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Commonwealth v. White, 293 Va. 411, 414 (2017) (quoting Evans v. Commonwealth, 290 Va. 277, 280 (2015)). The factual findings to which the appellate court must defer include the trial court's assessment of the credibility of the witnesses. McCary v. Commonwealth, 36 Va. App. 27, 35 (2001). However, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment. Glenn, 275 Va. at 130.

The appellant raises three challenges pertaining to his motion to suppress. First, he argues that Nathanson's seizure of the firearm violated his Fourth Amendment rights. Second, he suggests that the examination of the firearm for its serial number was an unconstitutional search. Third, he contends that the officer unlawfully extended the traffic stop by reading the serial number and consulting a database to determine if the firearm was stolen.[3]

### 1. Seizure of Firearm

The appellant suggests that Nathanson violated his Fourth Amendment rights because the seizure of the firearm was not supported by probable cause.

The Fourth Amendment protects people from unreasonable searches and seizures. E.g., Sidney v. Commonwealth, 280 Va. 517, 522 (2010). Nonetheless, during a traffic stop, "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." Rodriguez v. United States, 575 U.S. 348, 356 (2015); see also Arizona v. Johnson, 555 U.S. 323, 331 (2009) ("[T]he risk of a violent encounter in a traffic-stop setting 'stems not from the ordinary reaction of a motorist stopped . . . but from the fact that evidence of

---

[3] The appellant does not challenge the initial traffic stop or Nathanson's request for him to get out of the car.

a more serious crime might be uncovered during the stop." (quoting Maryland v. Wilson, 519 U.S. 408, 414 (1997))); Kidd v. Commonwealth, 38 Va. App. 433, 444 (2002) (noting that during a lawful detention, an officer "is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety'" (alterations in original) (quoting Welshman v. Commonwealth, 28 Va. App. 20, 34 (1998) (*en banc*))).

"This Court has previously upheld the warrantless seizure of firearms in plain view . . . when those firearms posed a potential threat to officer safety." Moore v. Commonwealth, 69 Va. App. 30, 38 (2018). Such a seizure during the course of a traffic stop is permissible under the Fourth Amendment if the officer has a reasonable belief that the weapon poses a danger to police. Taylor v. Commonwealth, 10 Va. App. 260, 265 (1990). "[T]he issue is whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 264 (first alteration in original) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). "Reasonableness is judged from the perspective of a[n objectively] reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's [subjective] intent or motivation." Thompson v. Commonwealth, 54 Va. App. 1, 7 (2009) (quoting Scott v. Commonwealth, 20 Va. App. 725, 727 (1995)).

During the instant stop, which occurred at night, Sergeant Nathanson asked the appellant whether he had any firearms in the vehicle. Although the appellant admitted that he did, he was evasive about where the firearm was located. Nathanson asked at least four times about the location of the gun. Each time, the appellant responded only that it was concealed.

After writing the summonses, Sergeant Nathanson approached the appellant again, in order to issue the documents, and asked him to get out of the car. See, e.g., Welshman, 28 Va. App. at 31 (discussing the extension of Pennsylvania v. Mimms, 434 U.S. 106 (1977), in Wilson, 519 U.S. at 414-15, holding that "a police officer making a routine traffic stop may

order" an occupant "out of the car for safety reasons, even if the officer has no reason to suspect the [person] of criminal behavior"). Nathanson explained that this was necessary due to the dog in the passenger compartment and in order to observe the appellant's motor skills. The appellant initially refused to comply but eventually acquiesced. When the appellant got out of the car, Nathanson immediately saw the butt of the large revolver inside the appellant's open jacket. We conclude that under these circumstances, once Nathanson saw the firearm in plain view protruding from the appellant's jacket, the objective circumstances provided him a reason to believe that his safety or that of another officer on the scene was in danger.[4] See Moore, 69 Va. App. at 41 (holding that the police officer was permitted to seize the firearm that was in plain view on the floorboard of a vehicle). Consequently, his seizure of the firearm during the lawful traffic stop was permissible under the Fourth Amendment.

## 2. Serial Number

The appellant argues that the examination of the firearm for its serial number was unlawful. He contends that Sergeant Nathanson's examination of the firearm's serial number violated the Fourth Amendment. In support of this argument, he relies on the facts that he was carrying the gun in compliance with Virginia's concealed weapons statutes and the gun did not appear to be altered or otherwise "look illegal." We disagree with the appellant's analysis.

---

[4] In light of this holding, we do not address the broader question of whether a police officer may constitutionally seize a firearm during a traffic stop regardless of whether other factors support the inference that a driver or passenger is dangerous. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" White, 293 Va. at 419 (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015)). We recognize that, in a different context, the Fourth Circuit has indicated that a frisk for weapons is justified when a law enforcement officer "reasonably suspects that the person . . . stopped is armed" with a deadly weapon. United States v. Robinson, 846 F.3d 694, 699 (4th Cir. 2017). In this case, the best and narrowest ground is the conclusion that the seizure of the gun was constitutional because the objective circumstances supported the conclusion that it posed a potential threat to officer safety.

Nathanson took control of the firearm in order to ensure officer safety during the traffic stop. Once the sergeant lawfully possessed the gun, he entered its serial number into a database. The appellant does not allege, nor does the evidence indicate, that Nathanson did anything other than look at the firearm in order to see its serial number, which was visible on the gun.[5]

"[T]he touchstone" of Fourth Amendment analysis is "whether a person has a 'constitutionally protected reasonable expectation of privacy.'" Oliver v. United States, 466 U.S. 170, 177 (1984) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). Whether an individual has a legitimate expectation of privacy in a particular item involves a two-pronged test. See Salahuddin v. Commonwealth, 67 Va. App. 190, 203 (2017). "First, a defendant must show 'that he personally has an expectation of privacy in the [item] searched.'" See id. (quoting Rideout v. Commonwealth, 62 Va. App. 779, 786 (2014)). This subjective determination is a finding of fact given deference on appeal. Johnson v. Commonwealth, 26 Va. App. 674, 684 (1998). "Second, a defendant must prove that his subjective expectation of privacy is one that society is prepared to recognize as objectively reasonable." Salahuddin, 67 Va. App. at 203. This is a legal determination that we review *de novo*. Id. If a defendant satisfies these two requirements, the burden shifts to the Commonwealth to prove "the legitimacy of [the] warrantless search." Simmons v. Commonwealth, 238 Va. 200, 204 (1989); see Harris v. Commonwealth, 241 Va. 146, 152 (1991) (noting that warrantless searches and seizures are "presumptively unreasonable").

---

[5] Action taken to expose a serial number or other identifying mark that is not already visible constitutes a search. See Arizona v. Hicks, 480 U.S. 321, 324-25 (1987) (holding that moving stereo equipment to obtain its serial number constituted a search). Compare Harris v. Commonwealth, 241 Va. 146, 154 (1991) (concluding that the officer did not have probable cause to open film canister), with United States v. Walsh, 791 F.2d 811, 816 (10th Cir. 1986) (holding that when a firearm is in plain view, ascertaining whether it had a serial number "is acceptable because it merely discloses the existence of a serial number as well as the number itself").

Assuming without deciding that the appellant established that he had a subjective expectation of privacy in the firearm's serial number, we address the second question—whether his subjective expectation of privacy is one that society is prepared to recognize as objectively reasonable. A court determines if an expectation of privacy is objectively reasonable based on a source outside the Fourth Amendment. United States v. Jones, 565 U.S. 400, 408 (2012). In doing so, the reviewing court references either "concepts of real or personal property law" or "understandings that are recognized and permitted by society." Id. (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)). "Additionally, this objective assessment is conducted in light of the totality of the circumstances." Salahuddin, 67 Va. App. at 204.

Other jurisdictions considering the issue have held that no reasonable expectation of privacy exists with regard to serial numbers on firearms in the lawful possession of law enforcement. See United States v. Watts, 7 F.3d 122, 127 (8th Cir. 1993) (holding that once police officers legally possessed firearms, they were entitled to record their serial numbers); United States v. Kinney, 953 F.2d 863, 866 (4th Cir. 1992) ("The only fact that the officers could determine from the serial numbers was whether the guns were contraband. This fact . . . cannot be the source of a privacy expectation 'that our society is prepared to consider reasonable.'" (quoting United States v. Jacobsen, 466 U.S. 109, 122 (1984))); United States v. Walsh, 791 F.2d 811, 816 (10th Cir. 1986) (holding that when a firearm is in plain view, ascertaining whether it had a serial number "is acceptable because it merely discloses the existence of a serial number as well as the number itself"); State v. Harris, 50 A.3d 15, 28-30 (N.J. Sup. Ct. 2012) (reversing suppression of evidence based on law enforcement's check of weapons' serial numbers); State v. Guiterrez, 94 P.3d 18, 24 (N.M. Ct. App. 2004) (holding that after the firearm was legally seized by police, the defendant "no longer had a reasonable expectation of privacy in the weapon"); cf.

New York v. Class, 475 U.S. 106, 113-14 (1986) (concluding that there is no reasonable expectation of privacy in a vehicle identification number required to be in plain view).

After reviewing the legal principles relevant to this case, we agree with this persuasive authority. Once Sergeant Nathanson had lawfully seized the firearm to ensure safety during the stop, the appellant's expectation of privacy in its serial number was not objectively reasonable. Consequently, Nathanson was permitted to read the visible serial number and search for it in the firearms database.[6] See Watts, 7 F.3d at 127 (affirming the denial of a motion to suppress when the police officers checked the registration of the firearms in their lawful possession "via the police radio" to determine whether they were stolen).

The appellant asserts that the Code of Virginia "creates a reasonable expectation of privacy in certain firearms" based on its authorization for certain individuals to legally carry concealed weapons. See, e.g., Code § 18.2-308.01 (allowing an individual to carry a concealed handgun with a proper permit). However, we need not address this contention. See Dietz v. Commonwealth, 294 Va. 123, 134 (2017) (noting that an appellate court decides cases on "the best and narrowest grounds available" (quoting White, 293 Va. at 419)). Regardless of whether the Code creates a reasonable expectation of privacy in a serial number on a firearm carried pursuant to a concealed weapons permit, it would be eliminated in this instance by the police officer's lawful seizure of that firearm during the traffic stop. See Arizona v. Hicks, 480 U.S. 321, 326 (1987) ("It would be absurd to say that an object could lawfully be seized . . . but could not be moved for closer examination.").

---

[6] In light of this holding, we do not address whether an individual has a reasonable expectation of privacy in a stolen firearm. Cf. Byrd v. United States, 138 S. Ct. 1518, 1529 (2018) (holding that "[a] car thief would not have a reasonable expectation of privacy in a stolen car").

We conclude that viewing and recording a serial number from a firearm lawfully seized by an officer does not violate the Fourth Amendment. The circumstances of this case support the conclusion that Nathanson did not violate the appellant's constitutional protections against unreasonable searches by simply reading the serial number on the firearm and searching for it in the database.[7]

### 3. Duration of Stop

The appellant also argues that the seizure of his "person past the completion of the traffic stop, to effectuate the search of his firearm," was unconstitutional.

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns," which certainly may include the safety of the officer or officers engaged in the stop. Rodriguez, 575 U.S. at 354, 356 (citation omitted). "An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop," but "he may not do so in a way that prolongs the stop, absent the [independent] reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 355; see also United States v. Hill, 852 F.3d 377, 381-82 (4th Cir. 2017) ("[A]n officer need not employ 'the least intrusive means conceivable' in executing a stop, but he still must be reasonably diligent and must use 'the least intrusive means reasonably available.'" (quoting United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016))). If an officer develops independent reasonable suspicion or probable cause that an occupant has committed an additional traffic offense or crime, the officer may extend the stop for a reasonable amount of time in order to confirm or dispel that new suspicion. See Matthews, 65 Va. App. at 345.

---

[7] Based on this holding, we do not reach the Commonwealth's argument that any "search" was valid as a search incident to arrest. See Wright v. Commonwealth, 222 Va. 188, 192-93 (1981).

Reasonable suspicion must be more than an "unparticularized suspicion or 'hunch.'" Sidney v. Commonwealth, 280 Va. 517, 523 (2010) (quoting Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000)). "Nevertheless, it 'requires only "some minimal level of objective justification."'" Hairston v. Commonwealth, 67 Va. App. 552, 561 (2017) (quoting Branham v. Commonwealth, 283 Va. 273, 280 (2012)). "In making reasonable-suspicion determinations," an appellate court considers "the 'totality of the circumstances' . . . to [assess] whether the detaining officer ha[d] 'a particularized and objective basis' for suspecting legal wrongdoing." Mason v. Commonwealth, 291 Va. 362, 368 (2016) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). In addition, we review those circumstances through the lens "of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Matthews, 65 Va. App. at 346.

Based on the circumstances at the time that Nathanson searched the serial number in the database, the facts clearly supported a reasonable suspicion that the firearm was stolen. Despite possessing a concealed weapons permit and advising the sergeant of such, the appellant was not cooperative in either telling Nathanson where the gun was located or getting out of the car, risking exposure of the large revolver on his person. Immediately after seizing the firearm, Nathanson smelled what he believed to be unburned marijuana. The appellant denied possessing marijuana, but the sergeant found a green leafy substance believed to be marijuana on his person. At that point, Sergeant Nathanson had reasonable suspicion to detain the appellant to investigate further based on the suspicious circumstances surrounding the gun and the evidence of marijuana. Consequently, the continued detention and running of the serial number were

permitted under the circumstances to allow the officers to confirm or dispel the suspicion that the appellant was in possession of a stolen gun.[8]

### B. Sufficiency of the Evidence

When considering the sufficiency of the evidence, an appellate court views the evidence "in the light most favorable to the Commonwealth, the prevailing party below." Smallwood v. Commonwealth, 278 Va. 625, 629 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). This deferential standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[ ] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. Vasquez v. Commonwealth, 291 Va. 232, 236 (2016) (quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)). This standard "applies not only to the historical facts themselves, but [also to] the inferences from those facts." Clanton v. Commonwealth, 53 Va. App. 561, 566 (2009) (en banc) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2 (2003)). In drawing inferences from the evidence, the fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he lied to conceal his guilt. See Shackleford v. Commonwealth, 262 Va. 196, 209-10 (2001); Rollston v. Commonwealth, 11 Va. App. 535, 547-48 (1991).

Code § 18.2-108.1 provides that it is a felony for any person to "buy[] or receive[] a firearm from another person or aid[] in concealing a firearm, knowing that the firearm was stolen." The elements of the offense are that (1) the firearm was "previously stolen by another," (2) it was received by the appellant, and that the appellant acted (3) "with knowledge of the theft" and (4) with "a dishonest intent." Shaver v. Commonwealth, 30 Va. App. 789, 800 (1999)

---

[8] Again, based on this holding, we do not address the question of whether the running of the gun's serial number was also valid as a search incident to arrest based on the evidence of possession of marijuana.

(quoting Bynum v. Commonwealth, 23 Va. App. 412, 419 (1996)) (interpreting Code § 18.2-108). The only challenged element here is whether the appellant knew that the gun in his possession had been stolen.

Often, the element of guilty knowledge must be shown by circumstantial evidence. See Hawkins v. Commonwealth, 288 Va. 482, 486 (2014). This category of evidence "is as competent and is entitled to as much weight as direct evidence." Breeden v. Commonwealth, 43 Va. App. 169, 177 (2004) (quoting Coleman v. Commonwealth, 226 Va. 31, 53 (1983)). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (second alteration in original) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479 (2005)).

The appellant points to a number of circumstances that he argues do not affirmatively support a finding of guilty knowledge but instead suggest that he was unaware that the firearm was stolen. The reasonable hypothesis of innocence "principle 'merely echoes "the standard applicable to every criminal case,"'" namely that "the Commonwealth has the burden of proof beyond a reasonable doubt." Id. at 464 (first quoting Vasquez, 291 Va. at 250; and then quoting Commonwealth v. Hudson, 265 Va. 505, 513 (2003)). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Ragland v. Commonwealth, 67 Va. App. 519, 531 (2017) (quoting Case v. Commonwealth, 63 Va. App. 14, 23 (2014)). "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." Vasquez, 291 Va. at 250 (quoting Hudson, 265 Va. at 513).

First, the appellant points to the passage of more than one year between the robbery and his possession of the stolen gun. Second, he highlights the fact that "[t]here were no clear indicators on the firearm that would lead a person to believe it was stolen." Third, he argues that he did not engage in any "frantic efforts" to avoid arrest. Fourth, he suggests that his statements to Nathanson did not demonstrate guilty knowledge. Fifth, he notes that the record does not contain evidence that he paid a low price for the firearm.

These were all factors before the jury when it returned its verdict of guilty. The jury was instructed on the law and the elements of the crime. These various points highlighted by the appellant simply do not equate to innocence as a matter of law in light of the other evidence that was before the fact finder. It is clear that the jury, as trier of fact, was entitled to reject the appellant's hypothesis of innocence. See Vasquez, 291 Va. at 250. It did so here, and that decision is supported by the record. The appellant was extremely evasive when Sergeant Nathanson asked him where the firearm was located. Cf. Covil v. Commonwealth, 268 Va. 692, 696 (2004) ("A[n] . . . evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge."). The appellant initially refused to comply with Nathanson's request to get out of the car, supporting the inference that he knew doing so would expose the gun to the sergeant's view. It was only after multiple requests that the appellant eventually complied and thereby exposed the gun. When the sergeant informed him that the firearm was stolen, the appellant did not seem surprised despite stating that he did not know that it was stolen. See Rollston, 11 Va. App. at 547 (holding that the fact finder was entitled to conclude that the defendant was lying to conceal his guilt). The appellant would not identify the person from whom he received the gun, stating only that he bought it from "a person." Additionally, he told Nathanson that any charge "would get lost in court," and he added "that he had been stopped for a stolen firearm before and was not arrested

- 15 -

at that time." Taken as a whole, the evidence, including the appellant's actions and statements, supports the jury's finding that the appellant knew that the gun on his person had been stolen. See Moseley, 293 Va. at 465.

Based on the evidence before it, the jury rejected his hypothesis of innocence and reasonably concluded that the appellant knew that the firearm was stolen. That decision was supported by the record and was not plainly wrong. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that the appellant committed the offense of receiving a stolen firearm in violation of Code § 18.2-108.1.

### C. Field Test

The appellant contends that the trial court erred by admitting the result of the marijuana field test. He suggests that the Commonwealth did not provide an adequate foundation for its admission pursuant to Code § 19.2-188.1. The Commonwealth asks us to apply the "right result for the wrong reason" principle to affirm the conviction based on judicial notice.

### 1. Merits

The appellant argues that the trial court committed reversible error by admitting the field test result because the record does not support a finding that the Department of Forensic Science (DFS) approved the particular field test used by Sergeant Nathanson as required by the applicable statute.

The determination of the "admissibility of evidence is within the discretion of the trial court," and an appellate court will not reject such decision absent an "abuse of discretion." Tirado v. Commonwealth, 296 Va. 15, 26 (2018) (quoting Midkiff v. Commonwealth, 280 Va. 216, 219 (2010)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Thomas v. Commonwealth, 62 Va. App. 104, 111-12 (2013) (quoting Hamad

v. Hamad, 61 Va. App. 593, 607 (2013)).  A reviewing court may conclude that "an abuse of discretion has occurred" only in cases in which "reasonable jurists could not differ" about the correct result.  Commonwealth v. Swann, 290 Va. 194, 197 (2015) (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)).  "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law."  Coffman v. Commonwealth, 67 Va. App. 163, 166 (2017) (quoting Commonwealth v. Greer, 63 Va. App. 561, 568 (2014)).

Generally, for the result of a field test to be admitted into evidence, the proponent must provide some proof of the accuracy or reliability of the test.  Galbraith v. Commonwealth, 18 Va. App. 734, 740 (1994).  However, during a trial for possession of marijuana under Code § 18.2-250.1, a law enforcement officer is permitted to testify "as to the results of any marijuana field test approved as accurate and reliable by the Department of Forensic Science . . . regarding whether or not any plant material, the identity of which is at issue, is marijuana."  Code § 19.2-188.1.

The record before this Court contains no evidence pertaining to the reliability or accuracy of the specific field test used by Sergeant Nathanson.  Nor does it demonstrate that the test used has been approved by the DFS as required by Code § 19.2-188.1.  At trial, Sergeant Nathanson testified that the Richmond Police Department routinely used the test in question.  Nathanson explained that he received training on the test "during basic school."  The following colloquy took place:

> [Commonwealth]:  [T]his is still today the standard test that the Richmond Police Department uses?
>
> [Nathanson]:  It is.
>
> [Commonwealth]:  When you went to basic training with the Richmond Police were you actually trained by a Department of Forensic Science specialist?
>
> [Nathanson]:  We were trained by *department narcotic officers.*

- 17 -

(Emphasis added). Nathanson's testimony that he was trained on the standard test used by the Richmond Police Department by "department narcotic officers" does not establish that the DFS approved the test or for that matter that he was trained by the DFS, the question asked by the prosecutor.[9] This record simply does not support the admission of the field test result into evidence under Code § 19.2-188.1. See Galbraith, 18 Va. App. at 740. Consequently, we hold that the trial court abused its discretion by admitting it.[10]

## 2. Judicial Notice

The Commonwealth urges affirmance based on the "right result for the wrong reason" principle. See Spinner v. Commonwealth, 297 Va. 384, 391 (2019) (noting that this doctrine can also be "labelled 'the right result for a different reason'" principle (quoting Rickman v. Commonwealth, 294 Va. 531, 542 (2017))). It reasons that the trial court "could have taken judicial notice" that the DFS has approved the field test at issue. See Perry v. Commonwealth,

---

[9] The Commonwealth concedes that Nathanson was referencing the Richmond Police Department, not the DFS. While concessions of law are not binding on an appellate court, we may accept concessions of fact. Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*). The record entirely supports this concession. Such concessions embody the ethical duties expected of a legal advocate and are held in high esteem. See, e.g., Stephens v. Commonwealth, 274 Va. 157, 161 (2007) (recognizing the appropriateness of a concession by the Commonwealth); see also Va. R. of Prof'l Conduct 3.3 ("Candor Toward The Tribunal").

[10] The Commonwealth does not argue harmless error. We agree based on the record that the error is not harmless as it pertains to the conviction for possession of marijuana. See Code § 8.01-678. A non-constitutional error such as this one is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Turman v. Commonwealth, 276 Va. 558, 567 (2008) (quoting Code § 8.01-678). This Court upholds a criminal conviction "on the ground that any error involved is harmless only if it can conclude, without usurping the [trial court's] fact-finding function, 'that the error did not influence the [trial court] or had but slight effect.'" Graves v. Commonwealth, 65 Va. App. 702, 712 (2016) (quoting Clay v. Commonwealth, 262 Va. 253, 260 (2001)). In this case, the primary evidence supporting a finding that the substance possessed by the appellant was marijuana was the field test result. After reviewing the record, we conclude that we "cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error." See Clay, 262 Va. at 260 (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). Consequently, the error that the trial court made in admitting the result of the field test was not harmless.

280 Va. 572, 580 (2010) (explaining that this Court may rely on any ground to affirm a judgment, as long as that ground does not require additional factual development).

The test Nathanson used was the "NARK II #2005 Duquenois-Levine Reagent." Relying on the Virginia Register of Regulations, the Commonwealth suggests that this is the same test formally approved by the DFS. The relevant regulation provides that the DFS approved the "05 - Duquenois - Levine Reagent" as a field test for marijuana. See 32 Va. Reg. Regs. 2057, 2060 (Feb. 22, 2016). It lists this test under the heading "NARK II." Id. at 2059-60.

"A court may take judicial notice of a factual matter not subject to reasonable dispute in that it is either (1) common knowledge or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Va. R. Evid. 2:201(a). "Judicial notice is a short cut to avoid the necessity for the formal introduction of evidence in certain cases where there is no need for such evidence." Williams v. Commonwealth, 289 Va. 326, 332 (2015) (quoting Williams v. Commonwealth, 190 Va. 280, 291 (1949)).

To the extent that the Commonwealth asks us to affirm on the basis that the trial court *could have* taken judicial notice that the DFS approved the test at issue, any taking of judicial notice must be clear in the record. See id. at 333-34; Sutherland v. Commonwealth, 6 Va. App. 378, 383 (1988). Although "a trial court need not intone the words 'judicial notice' in order to notice a fact, the evidence, the arguments of the parties *and* the *statements of the trial court must demonstrate clearly* that the trial court has taken judicial notice of the fact before [the] party may rely upon such notice on appeal." Williams, 289 Va. at 333-34 (quoting Edmonds v. Commonwealth, 43 Va. App. 197, 201 (2004)). Here, the trial court was not asked to take judicial notice on this issue, nor did it actually do so.[11] Further, defense counsel was not given

---

[11] In contrast, the trial court appears to have mistakenly concluded that "the department" that provided Nathanson training on the test was the DFS rather than the Richmond Police Department.

an opportunity to dispute application of the regulation now referenced on appeal.  See Va. R. Evid. 2:201(c) ("A party is entitled upon timely motion to an opportunity to be heard as to the propriety of taking judicial notice."); Williams, 289 Va. at 334-35.  Therefore, we cannot affirm on this ground.

Alternatively, the Commonwealth suggests that this Court take judicial notice that the DFS approved the field test used by Nathanson.  The Commonwealth is correct that "[j]udicial notice may be taken at any stage of the proceeding," including by the appellate court.  See Williams, 289 Va. at 335 (quoting Va. R. Evid. 2:201(b)).

However, we are not persuaded that the "NARK II #2005 Duquenois-Levine Reagent" field test used by Nathanson is, as a matter of law, the same as the "NARK II" "05 - Duquenois - Levine Reagent" test approved by the DFS.  See 32 Va. Reg. Regs. at 2059-60.  This is not a matter of common knowledge.  The description of the test in the record does not exactly match the description of the approved test in the Virginia Register of Regulations now relied on by the Commonwealth.  On this record, to conclude that they reference the same test requires technical knowledge.  This is not a readily ascertainable fact such as one of geography, and the source relied on now does not match the test referenced in the record.  Compare Williams, 289 Va. at 336 (declining to take judicial notice that the address was in the City of Norfolk when no map was referenced in the trial court); Commonwealth v. Woodward, 249 Va. 21, 23 (1995) (holding that appellate judicial notice was not appropriate in that case); Keesee v. Commonwealth, 216 Va. 174, 175 (1975) (holding that the record did not contain enough facts to support taking judicial notice of venue), with Buttery v. Robbins, 177 Va. 368, 374 (1941) (taking judicial notice that Skyline drive is in Shenandoah National Park because it is "a matter of common knowledge").  Therefore, we decline to exercise our discretion to take judicial notice in this case.

Consequently, we reverse the conviction for possession of marijuana and remand for a new trial should the Commonwealth be so advised.

### III.  CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in denying the appellant's motion to suppress.  In addition, the record supports the jury's finding from all of the evidence that the appellant knew that the gun in his possession was stolen and therefore received a stolen firearm in violation of Code § 18.2-108.1.  Consequently, we affirm the conviction for receipt of a stolen firearm.  However, we also conclude that the trial court erred in admitting the evidence of the marijuana field test.  As a result, we reverse the conviction for possession of marijuana and remand for a new trial should the Commonwealth be so advised.

Affirmed in part, and reversed and remanded in part.