COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Ortiz, Raphael and White
Argued by videoconference


WILLIAM FRENCH, S/K/A
 WILLIAM CARLTON FRENCH
                                                          MEMORANDUM OPINION* BY
v.        Record No. 1498-23-1                    JUDGE KIMBERLEY SLAYTON WHITE
                                                                  APRIL 29, 2025
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                             Christopher R. Papile, Judge

              Charles E. Haden for appellant.

              Victoria Johnson, Senior Assistant Attorney General (Jason S.
              Miyares, Attorney General, on brief), for appellee.


        In late 2017, police received a 911 call from a distressed woman unable to speak to the

dispatcher.  Four officers arrived at the home of William Carlton French and saw that French was

forcibly restraining his wife, A.F., inside their home.  French ignored the officers' demands to

release her, prompting the officers to tase and handcuff him.  He then voluntarily stated that he had

molested his daughter, K.F., for the last two years.  He also admitted to having methamphetamine in

a bag in the home, which authorities subsequently found.  Over a year later, K.F. told her mother,

A.F., that French had molested her for several years in the garage of the home.

        French was charged with four sexual offenses related to the abuse of his daughter, along

with abduction, assault and battery, obstruction of justice, and possession of methamphetamines

from his altercation with A.F. and the officers.  A jury found him guilty of each offense.

---

        * This opinion is not designated for publication.  See Code § 17.1-413(A).

On appeal, French asserts that the officers did not have a valid basis for entering his home without a warrant and that the trial court incorrectly refused to suppress the evidence found inside, including his statements. He also argues that the trial court erred in not striking the evidence against him, asserting that the evidence was insufficient to convict him of the offenses. We disagree and affirm.

BACKGROUND

On the morning of December 21, 2017, French shut himself in a bathroom at the house he shared with his wife, A.F.,[1] and their four daughters, all under age eight. A.F. heard French crying and "rambling" and, worried, asked him to come out, but he refused. A.F. made lunch for the children and again asked French to come out of the bathroom, to talk to her, and to have lunch.

French came out of the bathroom and told A.F. to tell him that she loved him. Though A.F. insisted that she did, French pushed her against a wall and put his hands around her neck. A.F. signaled to her oldest daughter, K.F., to come down the stairs and to "go get help" across the street. French, though, ordered the child to go back upstairs, which she did. French put his hand over A.F.'s mouth and repeatedly told her that he loved her. A.F. pulled French's hand away from her mouth and yelled for K.F. to seek help from a neighbor across the street. K.F. then went across the street while French continued to hold A.F. against the wall with one hand on her neck and the other covering her mouth.

A.F. got French to calm down "mildly," and French followed her into the living room. There, he told her to sit down on the couch. French knelt in front of her and "leaned" against her legs, shifting his weight onto her and off of her while demanding that A.F. tell him that she loved him. His hands were around her neck as he leaned on her, but A.F. stated that he was not strangling her and that he did not strike her.

---

[1] We use the initials of the victims in order to afford them privacy.

A.F. and French remained in this position for "a couple of hours." A.F. explained that she "definitely did not feel free to leave," since she "could not get help," K.F. had not returned, and the rest of her children were upstairs crying. A.F. surreptitiously dialed 911 on her cell phone and hid it underneath a blanket.[2]

Newport News Police Officers Lyons, Machado, Moore, and Sadler responded to A.F.'s emergency call. The officers had received a dispatch indicating that there was an open line 911 call in which a woman could be heard crying and asking to be let go and a man could be heard yelling. The service report notes indicated that French "has PTSD and paranoia" and that "multiple edged weapons were inside" the house.

Each officer wore a body camera. Officer Sadler activated his body camera and went around the house to the back door, to "make sure that nobody ran out the back side of the residence." The other officers approached the house from the front; Officer Machado's body cam was active and recording.

From the sidewalk outside the house, the officers heard yelling and screaming. Through the partly open front door, Officer Moore saw into the living room and observed French on top of A.F., choking her, and heard her screaming "get off of me."[3] Based on their observations and A.F.'s apparent danger, the officers entered the house and announced their presence.

Once inside, the officers entered the living room and found French "grabbing onto" A.F. with his arms "wrapped around" her neck and back. He was yelling into her face while she screamed and yelled. The officers ordered French to release A.F., but he refused. Believing that

---

[2] Her call created an "open line" with police dispatch, meaning that the person who called 911 was not "speaking directly to the dispatcher."

[3] Officer Machado's body cam footage does not clearly show that French was visible prior to entry. But the officers heard the screams of A.F. prior to entry. Moreover, Officer Moore testified that he entered the residence because "the door was partially open and I could actually see the assault occurring right in front of me."

French was choking A.F., whose face was turning purple, the officers continued to try to remove him. They tased French twice, but he kept holding A.F. and dragged her to the floor as he fell.

The officers eventually subdued and cuffed French, who shouted for A.F. and demanded to know that she loved him. Lying on his side on the ground, he volunteered that he had "killed people," "raped children," "done terrible things," and would "make sure there's some way they [i.e., the police] can find out." The officers called EMS because French had been tased; while one of the medics spoke with French, French made "spontaneous utterances in reference to sexually molesting his children." He further told the medic that he "liked torturing his daughters[,] and it turned him on when he inflicted pain on them." French stated that there was a tool bag in the hallway that contained "paraphernalia and methamphetamines." Finally, without prompting from the medic, French stated that he had videos of himself "molesting [his] daughter and getting her ready so [he] would be able to have sex with her and she would not tell anyone." Asked when this occurred, he said, "This was over the course of the past several years." He was taken to the hospital.

Based on French's statements, the police obtained two warrants to search the house for controlled substances and for child pornography. Medics conducted a safety check of the house due to concerns about a possible methamphetamine laboratory there. During the check, they found a black tool bag on the bathroom floor that contained a torch and a glass meth pipe. They declared the scene safe and cleared it until the search warrants could be executed.

When the police executed the warrants, they found two smoking devices, a torch, and a bag containing suspected methamphetamine. Testing revealed that the bag contained approximately 11 grams of methamphetamine.

In April 2019, after French had been arrested and was no longer in the house, K.F. disclosed to A.F. that French had repeatedly sexually molested her. A.F. took K.F. to the police station to

report the crimes. K.F. met with detectives and a Child Protective Services representative. She also went to a forensic interviewer at the hospital.

French was indicted on eight counts. He was charged with forcible sodomy of a person under 13, two counts of aggravated sexual battery of a person under 13, displaying child pornography to a person under 13, obstruction of justice, abduction, assault and battery of a family member, and possession of methamphetamine. At the suppression hearing before trial, French moved to suppress the evidence seized following the warrantless entry into his house.[4] The Commonwealth countered that the police lawfully entered the home under the emergency aid exception to the warrant requirement. The trial court denied the motion, finding that "the conduct of the police officers going into the residence was objectively reasonable" based on their training and experience, the information from the dispatch, and their observations at the scene.

French's trial took place before a jury on May 3 and 4, 2023. K.F. testified that French sexually abused her "multiple times a week" while she was six and seven years old. She explained that the abuse occurred primarily in the house's attached garage. Beginning in 2016, K.F. began spending a lot of time in the garage with French, who stored tools, computers and monitors, and electronic parts there in disarray. French would not let A.F. into the garage with them and "flipped the doorknob around so it locked from [inside of] the garage."

When K.F. was six or seven years old, French was sitting naked on a chair in the garage and K.F. was sitting in front of him on a low chest of tools. He told her to open her mouth, then put his penis inside K.F.'s mouth, "not that far into" it but such that "some of [French's penis] was in" her mouth. He then made her stroke his penis with her hand for five to ten minutes. K.F. recalled

---

[4] French waived the right to counsel at his suppression hearing held March 27, 2023, questioning witnesses himself.

another occasion in which French was rocking her sister and "all of a sudden" made her stroke his penis from outside his pants.

On yet another occasion, French made K.F. watch a video on a monitor in the garage depicting a "little girl" having "sexual interactions" with her father as the girl's mother watched. K.F. explained that French would force her to masturbate him almost every time she was in the garage with him, but that he only made her perform fellatio on him once. French told K.F. not to tell her mother about the abuse or else she would "get in trouble."

K.F. explained that after some time, she began "feeling that [she] was hiding something from someone [she] trusted" and felt uncomfortable "every single day." She had difficulty sleeping and eating. In April 2019, she began having "flashbacks," suffered with her "stomach in knots," and worried that the abuse "would stick with [her] forever if [she] d[id]n't say something." K.F. went into her mother's bedroom and told her about the abuse; A.F. started to cry as she listened. K.F. explained at trial that reporting the abuse and testifying has made her feel better.

French testified on his own behalf at trial. He acknowledged that he told the medics that there was methamphetamine in the house. He also agreed that he had told the medics that he had videos of him sexually molesting his daughter. The jury found him guilty on all counts. The trial judge sentenced him to life in prison plus 65 years and 24 months and suspended 26 years and 12 months.

## ANALYSIS

On appeal, French argues that the trial court erred by denying his motion to suppress. He also contends that the trial court erred by denying his motion to strike because the evidence was insufficient to support his convictions.

## I. Motion to Suppress

French argues that the trial court erred by denying his motion to suppress. Specifically, he asserts that the police lacked a valid basis for entering his house without a warrant. He argues that there was no urgent need for immediate and warrantless entry because the circumstances only indicated that an argument, not a crime, was underway and that the four officers could have maintained the parties' status quo for enough time to seek a warrant. The Commonwealth replies that the officers "had an objectively reasonable basis" for perceiving that A.F. "needed immediate aid" and, thus, the warrantless entry was proper under the emergency aid exception.

A defendant bears the burden of establishing that a trial court's ruling on a motion to suppress is reversible error. *See Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020) (citing *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)). In considering a trial court's suppression ruling, we view "the evidence in the light most favorable to the Commonwealth and afford[] it the benefit of all inferences fairly deducible from that evidence." *Id.* at 474-75 (citing *Hill v. Commonwealth*, 297 Va. 804, 808 (2019)). "A defendant's claim that evidence was seized in violation of the Fourth Amendment," requiring such evidence to be suppressed, "presents a mixed question of law and fact that [we] review *de novo*." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002)). Though we defer to the trial court's findings of fact, we independently determine "whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Id.* (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)).

The Fourth Amendment guarantees the right to "retreat into [one's] own home and there be free from unreasonable governmental intrusion." *Ross v. Commonwealth*, 61 Va. App. 752, 759 (2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)). "As a general rule, 'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Id.*

(quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). But the presumption that warrantless home entry is unreasonable "'may be overcome in some circumstances' because the 'warrant requirement is subject to certain reasonable exceptions.'" *Id.* (quoting *King*, 563 U.S. at 459).

A "well-recognized exception [to the warrant requirement] applies when '"the exigencies of the situation" make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *Roberts v. Commonwealth*, 82 Va. App. 61, 70 (2024) (alternations in original) (quoting *King*, 563 U.S. at 460). One exigency that falls within this exception is the "emergency-aid exception," which allows officers to "mak[e] warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)).

"The emergency-aid exception uses an objective standard." *Id.* at 71. The objective standard "requires only an objectively reasonable basis for believing that a person within . . . is in need of immediate aid." *Id.* (alteration in original) (internal quotation marks and citations omitted). We judge objective reasonableness "from the perspective of a reasonable officer on the scene," recognizing that an officer may be "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 72 (quoting *Ross*, 61 Va. App. at 762).

Here, the police dispatch received an open line call; a woman was crying and begging for release from a man yelling in the background. The officers also knew that French resided at the location, suffered from PTSD and paranoia, and possessed "numerous edged weapons." When they arrived at the house, the officers heard screams coming from inside and saw that the front door was ajar. Looking through the door, an officer saw French grabbing and leaning onto A.F. Though the body cam footage does not clearly show that French was visible before the officers entered the house, Officer Moore testified that French was visible prior to entry. Any conflict

- 8 -

between the body cam footage and the officers' testimony is a matter to be resolved by the fact finder, who in this case credited Officer Moore's testimony that he saw French being violent while Moore was still outside the home. *See Baez v. Commonwealth*, 79 Va. App. 90, 116 (2023) (holding that a "discrepancy" between video footage and an officer's testimony "goes to the weight of the evidence, not its admissibility" and that "it is not an abuse of discretion to admit the [video] evidence and let what doubt there may be go to the weight to be given" to it); *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) (holding that a fact finder "views video and other evidence to determine what it believes happened," whereas "we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as" the fact finder in this instance did).

Additionally, the officers heard French yelling at A.F., who screamed "get off of me." These circumstances provided a reasonable basis for the officers' conclusion that French presented an imminent threat of violence to A.F. Thus, their warrantless entry was justified under the emergency aid exception. We find no error in the trial court's denial of the motion to suppress.

## II. Motion to Strike

Next, French argues that the trial court was wrong to deny his motion to strike the evidence. He believes that the evidence was insufficient to convict him of the seven crimes of which he was found guilty. We disagree.

"A motion to strike tests the legal sufficiency of the evidence." *Hawkins v. Commonwealth*, 64 Va. App. 650, 654 (2015) (citing Rule 3A:15). The motion "challenges whether the evidence is sufficient to submit the case to the jury." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)). A trial court

has not erred in denying a motion to strike the evidence if "the Commonwealth presented a prima facie case for consideration by the fact finder." *See Hawkins*, 64 Va. App. at 657.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (emphasis added) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). We may not "substitute our judgment for that of the trier of fact," *id.* (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)); nor may we overturn the trial court's decision "unless it is plainly wrong or without evidence to support it," *id.* (quoting *Hendrick v. Commonwealth*, 257 Va. 328, 340 (1999)). Finding that a rational trier of fact could have found French guilty of each crime, we affirm the trial court's denial of his motion to strike.

*A. Sex Offenses*

Regarding the convictions for forcible sodomy of a child under the age of 13, aggravated sexual battery of a child under the age of 13, and displaying child pornography to a child less than 13 years old, French argues that K.F.'s testimony "was extremely vague and lacking in specificity as to time, place, or circumstances." He notes "the complete absence of physical evidence corroborating K[.F.'s] claims," such as "DNA, fingerprints, hair follicles, semen, or a PERK kit examination by a sexual assault nurse examiner."

"An accused shall be guilty of forcible sodomy if he . . . engages in . . . fellatio . . . with a complaining witness . . . [who] is less than 13 years of age." Code § 18.2-67.1(A)(1). "An accused is guilty of aggravated sexual battery if he . . . sexually abuses the complaining witness . . . [who] is less than 13 years of age." Code § 18.2-67.3(A)(1). Code § 18.2-67.10(6)(b) defines "sexual abuse" as "an act committed with the intent to sexually molest, arouse, or gratify any

person, where . . . [t]he accused forces the complaining witness to touch the accused's . . . intimate parts or material directly covering such intimate parts." And lastly,

> Any person 18 years of age or older who displays child pornography or a grooming video or materials to a child under 13 years of age with the intent to entice, solicit, or encourage the child to engage in the fondling of the sexual or genital parts of another or the fondling of his sexual or genital parts by another, sexual intercourse, cunnilingus, fellatio, anilingus, anal intercourse, or object sexual penetration is guilty of a Class 6 felony.

Code § 18.2-374.4(A).

Virginia law is clear that the fact finder could convict French based solely on K.F.'s testimony because it found her credible and believed her testimony. *See Fisher v. Commonwealth*, 228 Va. 296, 299 (1984); *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). "The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). "In addition, 'a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim.'" *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson*, 46 Va. App. at 87). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" *Id.* at 368-69 (alteration in original) (quoting *Wilson*, 46 Va. App. at 88).

Here, in its role as fact finder, the jury found K.F.'s testimony credible, and we do not disturb this finding on appeal. Our cases recognize that a "victim's youth, fright and embarrassment certainly provide[] the jury with an acceptable explanation for [delayed reporting of sexual assault]." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991); s*ee also Wilson*, 46 Va. App. at 88-89 (holding that a 12-year-old victim's delayed reporting of sexual assault due to

- 11 -

fear of the defendant and "shame and embarrassment at what was happening to her" were consistent with human experience); *Love v. Commonwealth*, 18 Va. App. 84, 89-90 (1994) (holding that a 13-year-old victim's 7-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible). K.F. explained that she delayed reporting the incidents because she feared French, who had threatened that she would get in trouble if she reported the abuse. The jury permissibly accepted K.F.'s explanation for the delay and her account of what had occurred.

"The conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (alteration in original) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Where credibility issues are resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) (citing *Corvin*, 13 Va. App. at 299). Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018).

"When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Smith*, 56 Va. App. at 718 (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). As long as a "witness deposes as to facts[,] which, if true, are

- 12 -

sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony." *Id.* (alteration in original) (quoting *Swanson*, 8 Va. App. at 379). "If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court." *Id.* at 718-19 (quoting *Swanson*, 8 Va. App. at 379).

The jury believed K.F.'s testimony and rejected French's denials that he sexually abused her. Her testimony was corroborated in part by French's unsolicited admissions to the medic who treated him at the scene. Despite the delay in reporting the events, K.F. clearly recalled the details of the events and stated with certainty that they had occurred. K.F.'s testimony was not inherently incredible as a matter of law and was sufficient to support French's convictions on his four sexual offense counts.

### B. Obstruction of Justice

French asserts that the videos and testimony failed to prove that he obstructed justice. He maintains that he was merely slow to respond to the officers' commands. "If any person by threats of bodily harm or force knowingly attempts to intimidate or impede . . . any law-enforcement officer, lawfully engaged in the discharge of his duty, . . . he is guilty of a Class 5 felony." Code § 18.2-460(C). The record includes sufficient evidence to prove that French obstructed justice. He repeatedly ignored the officers' commands, physically resisted their attempts to stop him from assaulting A.F., and declined to obey the officers until he was tased and handcuffed. French deliberately prevented the officers from aiding A.F. and impeded their investigation.

### C. Abduction

French contends that the evidence was insufficient to prove that A.F. had been seized or detained. A person is guilty of abduction if he, "by force, intimidation or deception, and without

legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty." Code § 18.2-47(A). "[A]lthough movement of the victim can establish that he or she has been abducted, it is no longer necessary with 'mere detention' of the victim being sufficient to meet the statutory requirement." *Walker v. Commonwealth*, 74 Va. App. 475, 490 (2022) (footnote omitted) (citing *Walker v. Commonwealth*, 272 Va. 511, 517 (2006)). "The abduction statute does not contain a temporal requirement, which means a victim can be detained under the statute even if only for the briefest of moments." *Brown v. Commonwealth*, 74 Va. App. 721, 732-33 (2022).

Here, the evidence proved that French held A.F. against her will for an extended period of time. Despite her pleas for release, French leaned his weight on A.F., choked her, and prevented her from leaving or getting help. A.F. explained that she did not feel free to leave and that she was terrified. A.F.'s account of the events, accepted by the jury, demonstrated that French abducted her and support his conviction.

### D. Assault and Battery

French argues that the evidence failed to prove he committed the offense of assault and battery. He points to A.F.'s testimony that French never struck or strangled her. "To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Id.* at 330 (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). "One cannot be convicted of assault and battery 'without an intention to do bodily harm—either an actual intention or an intention imputed by law.'" *Id.* (quoting *Adams*, 33

- 14 -

Va. App. at 468). "The unlawful intent may be imputed if the touching is 'done in a rude, insolent, or angry manner.'" *Id.* at 331 (quoting *Adams*, 33 Va. App. at 469).

Here, the evidence supports the finding that French touched A.F. in a rude, insolent, or angry manner by physically holding her down and placing his hands around her neck. The sustained attack on A.F. demonstrated that French acted with the requisite intent and committed an assault and battery.

### E. Possession of Methamphetamine

French argues that while he admitted he knew of the drugs in his house, the evidence failed to prove that he exercised dominion and control over the contraband. "In interpreting the Commonwealth's basic statutes proscribing possession of drugs, . . . the applicable legal principles are clear: Possession may be actual or constructive." *Wright v. Commonwealth*, 53 Va. App. 266, 273 (2009). "Establishing constructive possession requires proof 'that the defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control.'" *Watts v. Commonwealth*, 57 Va. App. 217, 232-33 (2010) (alteration in original) (quoting *Powers v. Commonwealth*, 227 Va. 474, 476 (1984)). "A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." *Id.* at 233 (citing *Archer v. Commonwealth*, 26 Va. App. 1, 12 (1997)). "Possession need not be actual, exclusive, or lengthy in order to support a conviction; instead, the statute criminalizes constructive or joint possession of illegal drugs of any duration." *Wells v. Commonwealth*, 32 Va. App. 775, 781 (2000).

"The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs and paraphernalia [in the

- 15 -

location in which police found it].” *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) (en banc). “Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.” *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (quoting *Archer*, 26 Va. App. at 12-13).

Here, French occupied the premises where the police found the drugs. Before conducting the search, French admitted that there was methamphetamine in a black tool bag inside the house. French also admitted that he had taken methamphetamine, allowing a reasonable fact finder to conclude that French was not only aware of the presence of the drugs, but also that they were under his dominion and control. From the facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that French was aware of the drugs, that they were subject to his dominion and control, and that he constructively possessed them.

The Commonwealth’s evidence was competent, not inherently incredible, and sufficient to prove beyond a reasonable doubt that French was guilty of forcible sodomy of a child under the age of 13, 2 counts of aggravated sexual battery of a child under the age of 13, displaying child pornography to a child less than 13 years old, felony obstruction of justice, abduction, assault and battery of a family member, and possession of methamphetamine.

CONCLUSION

Accordingly, we affirm the trial court’s judgment.

*Affirmed.*