Norfolk

## RANDOLPH TAYLOR

v.

## COMMONWEALTH OF VIRGINIA

No. 1046-88-1

Decided April 24, 1990

COUNSEL

Thomas L. Woodward, Jr., for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a bench trial, Randolph Taylor was convicted of possession of a sawed-off shotgun in violation of Code § 18.2-300(B). On appeal, Taylor raises the following issues: (1) whether the officers had a reasonable suspicion of criminal activity to stop and detain Taylor; (2) whether the gun was properly seized as the product of a protective search incident to an investigative stop; (3) whether the seizure of the gun was valid under the plain view doctrine; (4) whether Taylor's incriminating statements were admissible; and (5) whether the evidence was sufficient to prove Taylor possessed a sawed-off shotgun.

At the hearing on Taylor's motion to suppress, Officer David Livingston of the Suffolk Police testified that on Saturday evening, April 18, 1987, he and Officer David Broadwell were patrolling the grounds of Tidewater Community College. The officers were patrolling the area because the area was a popular "hangout" on weekend nights associated with the use of alcohol and marijuana. Further, in the past the police had received reports of gunfire and target shooting in the vicinity. At approximately 10:48 p.m., the officers noticed two vehicles parked one behind the other on a narrow path in the woods approximately 150 feet off the paved road. Their suspicions aroused, Livingston turned his vehicle's headlights off and proceeded down the path. Upon reaching the parked vehicles, Livingston turned the headlights on and activated his ve-

hicle's blue lights. At that time, he and Broadwell saw Taylor and three other individuals emerge from the woods. Livingston parked his vehicle with its front end facing the first vehicle, a white pick-up truck, thereby blocking the vehicles' passage. The officers asked for and received identification. Livingston testified that while Broadwell was running a computer check on the individuals, he walked to the back of the pick-up truck and shined his flash light in the bed of the truck. Livingston observed an Army duffel bag with approximately six inches of one or two gun stocks protruding, one of which had been sawed-off at the butt. Livingston testified that he picked up the duffel bag and removed the guns from the bag "for [his] safety to see what [he] was dealing with." After removing the guns from the bag, Livingston saw that the gun which had been sawed-off at the butt had also been sawed-off at the barrel. Livingston held the gun up and asked to whom it belonged. Taylor responded that it was his, and that he had purchased it for twenty dollars. Livingston confiscated the gun but did not arrest Taylor at that time. Livingston later discussed the matter with his Lieutenant, and the following day a warrant for Taylor's arrest was issued and executed.

Taylor first argues that the officers could not lawfully stop and detain him under *Terry v. Ohio*, 392 U.S. 1 (1968) because they lacked a "particularized and objective basis for suspecting [Taylor] of criminal activity." *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (citation omitted). As the Commonwealth correctly points out, this argument was not raised at trial. However, resolution of this issue is necessary to our analysis of other issues presented in this appeal. Therefore, we address this issue only insofar as we find the initial stop and detention of Taylor was lawful under *Terry*.

Taylor also argues that the gun could not be seized under the authority either of *Terry*, as the product of a protective search incident to an investigative stop, or under the plain view exception to the warrant requirement. The trial court held that the gun was properly seized because the officers "had authority to make a reasonable inquiry under the circumstances that existed out there that night. The sawed-off shotgun is in plain view, the butt of it sticking out of a bag. . . . I think the officer conducted himself properly." While it is difficult to discern from this statement under which theory the trial court found Livingston had authority

to seize the gun, for the reasons that follow we find the trial court correctly ruled the gun was properly seized, and, therefore, constituted admissible evidence.

 We begin with an analysis of *Terry*. In *Terry*, the Supreme Court held:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

392 U.S. at 30-31. In *Terry*, the Court emphasized that when assessing an officer's conduct "there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " *Id.* at 21 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534-35, 536-37 (1967)). "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. In *Michigan v. Long*, 463 U.S. 1032 (1983), the Supreme Court expanded its ruling in *Terry* and held:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049 (footnote omitted). In reaching this conclusion, the Court reasoned that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Id.* This danger is, in part, due to the fact that in a *Terry* investigation the officer has not yet taken custody and control over the suspect as he would if effecting an arrest. *Id.* at 1052.

With these principles in mind, we turn to the facts before us to determine whether Officer Livingston properly seized the sawed-off shotgun. Livingston testified that while he and Broadwell were waiting for the results of the computer check he shined his flashlight in the bed of the pick-up truck. Clearly, this action implicated no fourth amendment concerns. *See Derr v. Commonwealth*, 6 Va. App. 215, 220, 368 S.E.2d 916, 918-19 (1988). Livingston observed a duffel bag from which approximately six inches of one or two gun stocks were protruding. Livingston stated that the stocks were in plain view, and that he picked up the bag and removed the guns for his and Broadwell's safety. Taylor argues that the officers did not have reason to fear for their safety since neither he nor his companions displayed any aggressive conduct during their detention. However, we do not believe that this display of cooperation during the initial stages of the encounter was sufficient to allay Livingston's fear for his and Broadwell's safety after discovering the guns. The incident occurred late at night in a secluded wooded area associated with the use of alcohol, marijuana and guns. The suspects outnumbered the officers by two, creating a risk that the officers might have been overpowered by the group. Further, because of the position of the vehicles on the narrow path and the ready accessability of the guns in the bed of the truck, the officers were exposed to the danger that any one of the individuals at the scene might harm them with these guns as the officers left the scene. Thus, we find that under the circumstances, once Livingston saw the guns protruding from the bag he had reason to believe Taylor and his companions might be dangerous and consequently that his safety or that of the other officer was in danger.

Taylor argues that even if Livingston did reasonably fear for his and Broadwell's safety, he did not have authority to seize the guns. In support of this position Taylor relies on the language employed by the Court in *Long* to the effect that an officer may con-

duct "a search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden . . . ." 463 U.S. at 1049. Taylor argues that *Long* limits the search to the passenger compartment of a vehicle, and therefore, since the guns were discovered in the bed of the truck rather than the passenger compartment, Livingston could not seize them. We need not decide in this opinion whether an officer may seize a weapon in the bed of a pick-up truck during a *Terry* stop and investigation since we find the guns were properly seized under the plain view exception to the warrant requirement.

■ The plain view exception to the warrant requirement applies when: (1) the officer is lawfully in a position to view and seize the item; (2) the item is discovered inadvertently; and (3) it is immediately apparent to the officer that the item was evidence of a crime, contraband or otherwise subject to seizure. *Stokes v. Commonwealth*, 4 Va. App. 207, 209, 355 S.E.2d 611, 612 (1987). Taylor argues that since Livingston testified that he did not have reason to believe any of the guns were contraband until after he removed them from the duffel bag, he could not seize the sawed-off shotgun under the plain view exception. We disagree.

■ The phrase "immediately apparent" has been construed as requiring that the investigating officer possess probable cause to seize the item without further investigation. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987). Further, "[p]robable cause is measured against an objective standard." *United States v. Salinas-Calderon*, 728 F.2d 1298, 1300 (10th Cir. 1984) (citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964)); *see also United States v. Gray*, 659 F.2d 1296, 1299 (5th Cir. Unit B 1981); *United States v. Day*, 455 F.2d 454, 456 (3d Cir. 1972).

As previously stated, Livingston was lawfully in a position to view and seize the guns, which he inadvertently discovered during the *Terry* investigation. Livingston testified that it was only after he removed the guns from the bag that he realized one of the guns constituted contraband. The trial court found, however, that probable cause to seize the gun existed before Livingston removed it from the duffel bag because the "sawed-off shotgun is in plain view, the butt of it sticking out of a bag. It's easily identified by anyone knowledgeable with guns as a sawed-off shotgun. It is a felony to have one in your possession." Because the trial court was free to substitute its finding based on the objective facts before it

that probable cause to seize the gun existed prior to its removal from the bag, we hold that the gun was properly seized under the plain view exception, and therefore, constituted admissible evidence.

Taylor next argues that the trial court erred by admitting incriminating statements made by him before he was read his *Miranda* rights. In response, the Commonwealth argues that Taylor was not "in custody" for *Miranda* purposes when he voluntarily admitted ownership of the gun.

█ Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The totality of the circumstances viewed from the viewpoint of a reasonable person in the suspect's position must be considered when determining whether the suspect is in custody when questioned. *Wass v. Commonwealth*, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987). "It is only when a suspect's freedom of movement is curtailed to a degree associated with formal arrest that the suspect is entitled to the full protection of *Miranda*." *Id.*

Relying on this Court's holding in *Wass*, Taylor argues that he was in custody for *Miranda* purposes when he admitted ownership of the gun. We disagree. In *Wass*, approximately twelve armed police officers arrived at Wass' house to execute a search warrant; Wass was not under arrest at the time. The officers secured the house, with several officers surrounding it, and threatened to kill Wass' dog if he did not control it. The court held that the number of armed officers, the manner of their arrival and method of securing the house, and the threat to kill the dog combined to create a coercive environment in which a reasonable person would not believe that he was free to leave. We find the facts in *Wass* significantly different from those before us, and, therefore, find that *Wass* is not controlling in this case.

█ First and perhaps most importantly, the officers in *Wass* were executing a search warrant. In this case, Livingston and Broadwell were conducting a *Terry* stop and investigation. During a *Terry* stop and investigation:

the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*.

*Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) (footnotes omitted). We do not believe that Livingston and Broadwell exceeded their authority under *Terry*. Rather, they detained Taylor and his companions long enough to verify their identities, check whether there were any outstanding warrants against them, and inquire as to the reason for their presence in the area. During this brief detention Livingston discovered the gun and asked to whom it belonged. The question was put generally and was not directed to any one specific person. Further, Taylor was not obliged to respond. We find that, given the nonthreatening nature of Taylor's brief detention, he was not in custody for *Miranda* purposes at the time he admitted ownership of the gun. Therefore, the trial court did not err by admitting the incriminating statement.

Lastly, Taylor argues that the Commonwealth's evidence was insufficient to prove he possessed a sawed-off shotgun in violation of Code § 18.2-300(B). Code § 18.2-299(1) defines a sawed-off shotgun as follows:

any weapon, loaded or unloaded, originally designed as a shoulder weapon, utilizing a self-contained cartridge from which a number of ball shot pellets or projectiles may be fired simultaneously from a smooth or rifled bore by a single function of the firing device and which has a barrel length of less than eighteen inches for smooth bore weapons and sixteen inches for rifled weapons. Weapons of less than .225 caliber shall not be included.

Essentially, Taylor argues that the Commonwealth failed to establish that the gun was, in fact, sawed-off within the definition of Code § 18.2-299(1), and therefore, the Commonwealth failed to prove he was in possession of a sawed-off shotgun in violation of

Code § 18.2-300(B). However, Officer Livingston testified that the barrel of the gun was thirteen and one-quarter inches in length. Further, the gun was admitted into evidence as Commonwealth's exhibit number one. The trial court, as the trier of fact, stated that "the gun speaks for itself," and that "it's a .20 gauge shotgun and a shotgun shoots shells. It's been cut here, the barrel has been cut off, it's less than the prescribed length."

■ "As with all admissible evidence, the weight to be given to the exhibit [was] a matter for the [trier of fact]." *Cash v. Commonwealth*, 5 Va. App. 506, 513, 364 S.E.2d 769, 772 (1988). Because the judgment of the trial court sitting without a jury is not plainly wrong or without evidence to support it, we will not disturb it on appeal. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

For the foregoing reasons, the judgment appealed from is affirmed.

*Affirmed.*

Baker, J., and Barrow, J., concurred.