COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia


DWIGHT DELANO MOORE

v.       Record No. 0224-17-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
JUNE 5, 2018

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Rachel E. Wentworth, Assistant Public Defender, for appellant.

Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


On October 7, 2016, Dwight Moore ("appellant") entered a conditional guilty plea under

North Carolina v. Alford, 400 U.S. 25 (1970).[1]  Appellant's plea agreement preserved his right to

appeal the denial of his motion to suppress a firearm that police recovered following a traffic

stop.  The Circuit Court of the City of Chesapeake accepted appellant's plea and found him

guilty of possession of a firearm by a convicted felon, and appellant then appealed the denial of

his motion to suppress to this Court.

I. BACKGROUND

During the hearing on appellant's motion to suppress, Officer Daniel Smith testified that

he was on duty on November 2, 2014 at 9:51 p.m.  At that date and time, Officer Smith and

---

[1] Alford pleas allow "criminal defendants who wish to avoid the consequences of a trial
to plead guilty by conceding that the evidence is sufficient to convict them, while maintaining
that they did not participate in the acts constituting the crimes."  Carroll v. Commonwealth, 280
Va. 641, 644-45, 701 S.E.2d 414, 415 (2010) (quoting Parson v. Carroll, 272 Va. 560, 636
S.E.2d 452 (2006)).

Officer Lyle were patrolling and observed a vehicle (later determined to be driven by appellant) with no lights illuminating its rear license plate. The officers initiated a traffic stop; however, the vehicle did not pull over. The vehicle continued down the road briefly before appellant jumped out of the vehicle while it was still in motion, causing it to crash into two parked cars.

Officers Smith and Lyle pursued appellant on foot while commanding that he stop and that he was under arrest. Appellant ignored the officers' commands and continued to flee. Officer Smith testified that, during the pursuit, he requested assistance from nearby officers. Eventually, appellant "gave up and fell on the ground," and was placed under arrest.

Officer Groome testified that, meanwhile, he had gone to the crash site after receiving Officer Smith's call for assistance. Officer Groome also testified that he was the only police officer on the scene and that a crowd was forming near the crashed vehicle. Groome stated that there were no officers between the crowd and the crashed vehicle. Groome also stated that the crashed vehicle was in the middle of the road with its front door open on the driver's side. From his vantage point outside of the vehicle, Officer Groome saw an uncovered firearm in plain view near the gas pedal. He testified, "I noticed a firearm on the floorboard. I did secure the firearm and put it in the back of my police vehicle for safekeeping since the crowd was forming." Officer Groome testified that he did not enter the vehicle until he saw the firearm and that he unloaded the firearm before securing it. When asked on cross-examination if he received appellant's consent to enter the vehicle, Officer Groome answered, "No. I just saw the weapon and since a crowd was forming, I secured it for safekeeping because I wasn't sure if I needed to assist in helping catch Mr. Moore."

Subsequently, a police unit with a drug-sniffing dog arrived at the scene. Following an "open-air sniff" of the vehicle's exterior, the police dog alerted on the vehicle, indicating the potential presence of narcotics. However, a search only uncovered "a small, very minute

suspected marijuana roach for smoking marijuana . . . with burnt rolling papers" in the vehicle's ashtray.[2]

In denying appellant's motion to suppress the firearm, the trial judge stated:

> As far as the vehicle goes, I agree with the Commonwealth and probably most obviously *exigent circumstances*. When the officer could, in plain view, see the firearm, even though there was no evidence concerning whether it was stolen or it had been used in a crime, the mere fact that under all the circumstances of this case, that there was a firearm in a floorboard of a vehicle that had crashed into cars, the driver had fled, and that there was a crowd of people around, justified the officer taking possession of the firearm so that it wouldn't pose a danger to others, as well as the fact that it would still be in existence at the time that the circumstances were such that the police had gained control of the scene, and for those reasons will overrule the defense's motion to suppress the firearm.

(Emphasis added). Appellant's lone assignment of error states that "[t]he trial court erred in denying Moore's motion to suppress."

## II. ANALYSIS

### A. Standard of Review

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that [appellate courts] review *de novo* on appeal." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). "In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (alteration in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "[A]n appellate court must give deference to the factual findings of the

---

[2] On brief, the Commonwealth argues that Officer Groome's recovery of the gun, which was the subject of appellant's motion to suppress, was admissible under the doctrine of inevitable discovery based upon the probable cause from the police dog's alert. We need not address the issue of inevitable discovery, given our holding *infra* of exigent circumstances.

circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Commonwealth v. Robertson, 275 Va. 559, 563, 659 S.E.2d 321, 324 (2008).

### B. Presence of Exigent Circumstances

The Fourth Amendment protects the people against "*unreasonable* searches and seizures," it does not protect against searches and seizures that are reasonable. U.S. Const. amend. IV (emphasis added). "Warrantless searches, of course, are *per se* unreasonable, subject to a few well-defined exceptions." Abell v. Commonwealth, 221 Va. 607, 612, 272 S.E.2d 204, 207 (1980). These exceptions include "exigent circumstances," which arise when the very nature of an event demands an immediate response from law enforcement. See McCary v. Commonwealth, 228 Va. 219, 227, 321 S.E.2d 637, 641 (1984) ("Searches conducted without prior judicial approval are *per se* unreasonable . . . subject to exceptions allowed when exigencies require warrantless searches."). Exigent circumstances include:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

Verez v. Commonwealth, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985). Our Supreme Court has also recognized that because "[p]olice officers find themselves in a myriad of situations with varied fact patterns," no court can provide an "exhaustive enumeration of factors that would

- 4 -

distinguish circumstances that qualify as exigent from those that would not." Evans v.

Commonwealth, 290 Va. 277, 283, 776 S.E.2d 760, 763 (2015). Rather:

> [I]n each case a determination must be made whether the law enforcement officers had probable cause at the time of their warrantless entry to believe that cognizable exigent circumstances were present. The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight.

Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846, cert. denied, 454 U.S. 1053

(1981). Therefore, when determining whether exigent circumstances justify a warrantless

intrusion, courts must look at the facts of each case, "as they reasonably appeared to the law

enforcement officers on the scene." Verez, 230 Va. at 411, 337 S.E.2d at 753.

As the trial judge noted, the primary factor that contributed to the exigency of the

circumstances in the current case was the unsecured firearm and the potential threat it posed to

the other individuals on the scene. In conducting our de *novo* review of the trial judge's ruling,

we examine the threat that such a firearm presented to those individuals – the responding police

officer as well as the gathering crowd.

This Court has previously upheld the warrantless seizure of firearms in plain view from a

vehicle when those firearms posed a potential threat to officer safety. Taylor v. Commonwealth,

10 Va. App. 260, 391 S.E.2d 592 (1990); see also Michigan v. Long, 463 U.S. 1032 (1983). In

Taylor, two police officers were patrolling an area where young people were known to consume

alcohol and smoke marijuana. 10 Va. App. at 262, 391 S.E.2d at 593. Seeing two vehicles

parked down a narrow path, the officers chose to investigate and activated their vehicle's blue

lights. Id. The blue lights prompted four individuals to emerge from the woods; these

individuals provided their identification to the officers. Id. at 263, 391 S.E.2d at 593. One of the

vehicles was a pickup truck. In the bed of that truck, one officer saw a pair of shotguns in plain

view (One shotgun was sawed-off and resulted in the defendant's conviction). Id. at 263, 391

S.E.2d at 593-94. Upon seeing the guns, the officer immediately reached into the bed of the truck, without a warrant, and removed them for his safety and the safety of his fellow officer. Id. at 263, 391 S.E.2d at 594. In affirming the validity of the officer's warrantless seizure, this Court recognized that the "suspects outnumbered the officers by two, creating a risk that the officers might have been overpowered," and because of "the ready accessibility of the guns in the bed of the truck, the officers were exposed to the danger that any one of the individuals at the scene might harm them with these guns . . . ." Id. at 265, 391 S.E.2d at 595.

A police officer's ability to conduct a protective sweep of a vehicle, such as the one that occurred in Taylor, was established by the United States Supreme Court in Michigan v. Long, 463 U.S. 1032 (1983). The Court's justification for such a warrantless intrusion was the need to protect police officers in the course of their duties. Id. at 1049-50. See also, Arizona v. Gant, 556 U.S. 332, 346-47 (2009) (citing with approval Michigan v. Long and stating, "Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, *Michigan v. Long*[] permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.'" (quoting Long, 463 U.S. at 1049)).

In a previous case, Cady v. Dombrowski, 413 U.S. 443, 447 (1973), the United States Supreme Court also recognized that an unsecured firearm poses a threat to public safety and upheld the warrantless search of a vehicle as being a reasonable "caretaking 'search.'" Similar to appellant's case, in Cady, the vehicle in question was involved in a traffic accident. Id. at 435. The police secured the vehicle and had it towed to a private garage. Id. at 436. Afterwards, the police gained information that led them to believe that a policeman's revolver was inside the vehicle. Id. at 436-37. Without a warrant, a local police officer went to the garage and searched

the vehicle.  Id. at 437.  During this search, no gun was recovered; however, the officer discovered evidence in the vehicle which led to the defendant's conviction for murder.  Id.  In upholding the warrantless search, the United States Supreme Court stated that the "immediate and constitutionally reasonable" justification for the warrantless search was the "*concern for the safety of the general public* who might be endangered if an intruder removed a revolver from the trunk of the vehicle."  Id. at 447.[3]  See also United States v. Newbourn, 600 F.2d 452 (4th Cir. 1979) (applying the Court's reasoning in Cady and holding that a warrantless search of a car's trunk, which contained multiple stolen weapons, was reasonable).  Likewise, in Newbourn, the United States Court of Appeals for the Fourth Circuit reasoned, "Unless secured, [the guns] might fall into the hands of the arrested men, or vandals, or thieves.  Thus they posed potential danger both to law enforcement officials and to members of the general public."  Newbourn, 600 F.2d at 455.

We recognize that these cases, Taylor and Cady, were decided on different Fourth Amendment doctrines (i.e. the protective sweep of a vehicle and the community caretaker doctrine); however, they inform our analysis in the current case because they underscore the inherent danger that an unsecured and loaded firearm presents to both the police and the general public.  By applying the logic of these cases together, we conclude that the threat that the firearm presented to others at the crash site (i.e., the police and the gathering crowd) and the fact that a crime had been committed and appellant was still at large created exigent circumstances that made the warrantless seizure of the loaded firearm reasonable.  As the trial judge stated,

---

[3] In comparing the facts of Cady to the case at bar, we note that the firearm in the current case posed a greater threat to the general public than the mere suspicion of a firearm in Cady. The vehicle in Cady had already been removed from the scene of the crash and was secured in a local garage.  Id. at 436.  In the current case, a firearm was *actually* present and Officer Groome could clearly see the loaded gun from his vantage point outside of the vehicle, which had not yet been secured or removed from the crash site.  Therefore, the chance that a member of the general public could access the firearm was much greater in this case than it was in Cady.

"*[E]xigent circumstances* . . . justified the officer taking possession of the firearm so that it wouldn't pose a danger to others, as well as the fact that it would still be in existence at the time that the circumstances were such that the police had gained control of the scene . . . ." See Verez, 230 Va. at 410, 337 S.E.2d at 753 (listing "the degree of urgency involved and the time required to get a warrant . . . [and] the possibility of danger to others, including police officers left to guard the site," as factors that can establish exigent circumstances).

"Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), the specific facts of this case lead us to conclude that exigent circumstances necessitated Officer Groome's reasonable and prompt seizure of the loaded firearm. Here, Officers Smith and Lyle were in hot pursuit of appellant who refused to stop his vehicle, leapt from it while it was still in motion, and caused his vehicle to crash into two other cars. Clearly, the officers then had probable cause that appellant had committed a hit and run of two vehicles as he sought to elude police. Chasing appellant on foot, Officer Smith requested assistance from nearby officers, and Officer Groome went to the scene of the crash. Officer Groome, who was the lone officer on the scene, observed a crowd forming near the crashed vehicle. There was no police presence between the crowd and the vehicle. Like the police officers in Taylor, Officer Groome was outnumbered by the crowd. Also, similar to the facts of Taylor, the firearm was in plain view – here on the vehicle's floorboard, and, therefore, it was also visible to members of the crowd. Believing that he may need to assist Officers Smith and Lyle in their pursuit of appellant, Officer Groome seized the firearm, unloaded it, and secured it in his police vehicle. Here, unlike the situation even in Cady, the vehicle had not yet been secured. Rather, it was in the middle of the road where members of the crowd or appellant, if he had returned to his vehicle, could immediately have accessed the loaded firearm. In short, as

- 8 -

Officer Groome observed the situation, there was not sufficient time to secure a warrant as numerous people could have potentially obtained the firearm in the interim. Therefore, exigent circumstances dictated that he seize the gun in order to protect himself and others.

Appellant argues that the Commonwealth failed to show how long it would have taken for the police to obtain a search warrant and that the Commonwealth presented no evidence to show that the crowd was disruptive or dangerous. Also, appellant argues that no evidence showed that Officer Groome was aware of criminal charges that appellant faced or if appellant was a felon at the time that Groome seized the firearm. Appellant's arguments are not persuasive. In Taylor, nothing established that the four individuals who emerged from the woods were an imminent threat. However, this Court concluded that a warrantless seizure of the firearms in that case was reasonable, given that the officers were outnumbered and could have been harmed by the firearms. Taylor, 10 Va. App. at 265, 391 S.E.2d at 595. Similarly, in the current case, it would be unreasonable for us to conclude that the members of the crowd, who were already standing near the car, needed to present an imminent threat to the officer or others in the crowd before the officer was permitted to seize the loaded firearm.

### III. CONCLUSION

In short, exigent circumstances were clearly present when Officer Groome, the lone policeman on the scene at the time, saw the firearm in plain view on the floorboard of the vehicle from which appellant had just fled, leaving the door open. At the time Officer Groome seized the gun, appellant was still at large and possibly could have returned to his vehicle at any time to arm himself. In addition, a crowd had already gathered around the vehicle, which had run into two other parked cars. Therefore, taking control of the uncovered and loaded firearm was necessary for officer safety as well as for the safety of the gathered crowd. For all of these reasons, we hold that

the circuit court did not err in denying appellant's motion to suppress, and we affirm his conviction for possession of a firearm by a convicted felon.

Affirmed.