UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Causey and Frucci

MICHAEL LORENZO LUGO, JR.

v.      Record No. 0993-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 28, 2025

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey, Judge

(Henry Dennis Harmon, Jr., on brief), for appellant.

(Jason S. Miyares, Attorney General; Andrew T. Hull, Assistant
Attorney General, on brief), for appellee.

Following a bench trial, Michael Lorenzo Lugo, Jr., was convicted of possessing a

firearm as a non-violent felon, in violation of Code § 18.2-308.2.[1]  On appeal, Lugo argues that

the court erred in denying his motion to suppress the firearm on grounds that the police lacked

reasonable suspicion to detain him and seize the weapon.  He further contends that the court

erred in denying his motion to strike because no evidence established that the firearm was

operable or "capable of expelling a projectile by gaseous explosion."  Finding no error, we

affirm the conviction.[2]

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court dismissed a charge of attempting to flee from law enforcement, in
violation of Code § 18.2-460(E).

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the dispositive issue or issues have been authoritatively
decided, and the appellant has not argued that the case law should be overturned, extended,
modified, or reversed."  *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND

We review the evidence in the light most favorable to the Commonwealth, the prevailing party below. *See Williams v. Commonwealth*, 71 Va. App. 462, 472 n.2 (2020) (applying this standard to appellate review of both suppression and sufficiency-of-the-evidence issues).

Norfolk Police Detective Larue Wilkins was called to a residence to investigate a "possible domestic disturbance" and a violation of a protective order. When Detective Wilkins arrived, loud music was playing from a car parked on the street, and Lugo and a woman were arguing at "high . . . volume" over the music; the woman was telling Lugo that she wanted him to leave. Although it was the middle of July, Lugo was wearing bulky camouflage fatigues and "a full mask."

Detective Wilkins separated the two and spoke first with Lugo, who refused to provide his last name and became "passive aggressive" toward the officer. Detective Wilkins stated that he was about to physically detain Lugo for investigative purposes.[3] Lugo ran toward the residence and "attempt[ed] to go inside." Officer Kyle Boone arrived and tried to help Detective Wilkins handcuff Lugo. A firearm was readily apparent in a holster on Lugo's right hip. Officer Boone took the firearm out of Lugo's holster and placed it on the ground while he continued assisting Detective Wilkins. Officer Boone then tucked the firearm in the back of his own waistband.

Sergeant Adam Dierks responded to an "officer needing assistance" request on the police radio. When he arrived, he saw Detective Wilkins and Officer Boone in a "physical alteration" with Lugo. He retrieved Lugo's firearm from Officer Boone's waistband, placed it in his police car, and later made it "safe" by ejecting the magazine and pulling the slide to the rear. The firearm was a semiautomatic pistol, and Sergeant Dierks found ammunition rounds in the magazine and one round in the chamber when he pulled the slide back. He returned to help the other officers and described

---

[3] The prosecution played a portion of Detective Wilkins's body-worn camera video where, at minute 5:08, he stated that he was "about to go hands on." That portion of the video was not part of the record submitted on appeal.

Lugo as tense, "elevated," and repeatedly asking for "one of [the officers] to shoot him." Lugo was "kicking and pulling and preventing [himself] from being put in the car." Sergeant Dierks later returned the disabled firearm to Officer Boone.

Lugo was arrested for possessing a firearm as a convicted felon. He moved to suppress the firearm and dismiss the charge, arguing that the officers had no reasonable suspicion under the Fourth Amendment to detain him. After a hearing, the court denied the motion, finding that there was "reasonable articulable suspicion to conduct a *Terry* stop" based on a "verified domestic disturbance call" and a "potential protective order violation." Further, the woman involved in the situation was on the porch and had told Lugo to "leave the property, which objectively raised concerns of trespassing." Finally, the court found that Lugo's "unwillingness to identify himself raised suspicions about the legality of his presence on the property."

At trial, Sergeant Dierks testified that he had served as a small arms repairer and technician in the Marine Corps, was a patrol rifle instructor, a firearms instructor, a Glock armorer, and a chemical munition weapons instructor. The court viewed video footage from Sergeant Dierks's body-worn camera, which depicted him retrieving the firearm from Officer Boone's waistband. When asked about the operability of the firearm, he pointed out the firing pin shown in the video as "part of the hammer." Sergeant Dierks explained that "all the mechanics were there," including "live rounds." Further, there was a "magazine inserted," and the "back end of the firing pin" was visible. In short, the gun was "an operable weapon," which was "designed, made or intended to expel a projectile by means of explosion." Further, Sergeant Dierks stated that "when the hammer hits [the firing pin], that firing pin will come out and nail the primer, which ignites the powder, which pushes the projectile, pushes it forward." The Commonwealth also presented the firearm itself as an exhibit.

Lugo moved to strike the evidence, arguing that the Commonwealth presented mere "insinuations" but no proof that the item retrieved from his hip holster was a firearm. He stated that Code § 18.2-308.2 requires the item to be "real" and contended that the evidence did not rise above suspicion or probability. The court denied the motion, finding that "from everything that [it had] seen, both in terms of the video footage, also examining the weapon and also testimony of the officer," the item was a firearm. Lugo presented no evidence, and the court convicted him.

ANALYSIS

I. Reasonable Suspicion for Investigatory Detention

When reviewing an order denying a motion to suppress evidence, "the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021). Such a claim "presents a mixed question of law and fact that [appellate courts] review *de novo*." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002)). Although we defer to the trial court's findings of fact, we independently determine "whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Id.* (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). An appellant bears the burden of establishing that the ruling is reversible error. *Williams*, 71 Va. App. at 474.

The Fourth Amendment protects people "against unreasonable searches and seizures." U.S. Const. amend. IV; *see Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009). "The 'touchstone of the Fourth Amendment is "reasonableness,"' as measured in objective terms." *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)); *accord Glenn v. Commonwealth*, 275 Va. 123, 130 (2008). "Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Thompson*, 54 Va. App. at 7

(quoting *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995)); *see also Commonwealth v. Hubbard*, ___ Va. ___, ___ (Sept. 11, 2025).

An investigative detention requires the police officer to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion "upon the constitutionally protected interests of the private citizen." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 27. But "a police officer may, without violating the Fourth Amendment, make a brief investigatory stop of a person when the officer has a reasonable suspicion, based on objective facts, that criminal activity may be afoot." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016); *see Terry*, 392 U.S. at 30. Under this standard, a police officer may detain an individual upon reasonable articulable suspicion that he is "involved in, or ha[s] recently been involved in, some form of criminal activity." *Hairston v. Commonwealth*, 67 Va. App. 552, 564 (2017) (emphasis omitted) (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 441 (1994) (en banc)).

Detective Wilkins was investigating a reported domestic disturbance and an allegation of a protective order violation. When Detective Wilkins arrived, Lugo and a woman were outside arguing loudly, and he heard the woman tell Lugo to leave. Detective Wilkins needed no suspicion of criminality to "pose questions" or to "ask for identification." *Barkley v. Commonwealth*, 39 Va. App. 682, 691 (2003) (quoting *United States v. Drayton*, 536 U.S. 194, 201 (2002)). Although Lugo initially complied with Detective Wilkins's requests, he refused to disclose his full name. The woman was yelling at Lugo to leave, which, as the court found, "objectively raised" additional "concerns about trespassing." Lugo's unwillingness to fully identify himself and comply with the officer's requests, along with his unusual clothing—bulky

- 5 -

camouflage in July and a face covering—raised "suspicions about the legality of his presence on the property."

The court reasoned that when Detective Wilkins separated Lugo from the woman, he had the "authority to detain [Lugo] and require that [Lugo] identify himself." Considering the totality of the circumstances, the court did not err in finding that Detective Wilkins had reasonable articulable suspicion to detain Lugo and investigate whether Lugo had committed an offense. Indeed, the very purpose of a *Terry* stop is to address ambiguous situations to quickly confirm or dispel the suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

The officers' seizure of the firearm during this investigatory detention was likewise lawful. Under *Terry*, police officers are entitled "for the protection of [themselves] and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons [that] might be used to assault [them]." 392 U.S. at 30. "Such a search is reasonable under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." *Id.* at 31.

Because Lugo's detention, and the officers' seizure of the firearm in the process of detaining him, did not violate the Fourth Amendment, the court did not err in denying the motion to suppress.

## II. Sufficient Evidence of Firearm

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition

it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

Code § 18.2-308.2 prohibits possessing a firearm as a convicted felon. The statute provides no express definition of "firearm," but the Supreme Court of Virginia has defined it as "any instrument designed, made, and intended to fire or expel a projectile by means of an explosion." *Jordan v. Commonwealth*, 286 Va. 153, 157 (2013) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 583 (2002)). The Supreme Court "explicitly rejected . . . any element of present capacity or operability." *Id.* The Commonwealth need only show that the firearm was designed, made, and intended to fire or expel a projectile by means of explosion; it need not prove the item had the current ability to do so. *Id.*; *see also Speller v. Commonwealth*, 69 Va. App. 378, 394-95 (2018).

The officers' testimony, based on their training, personal experience, and observations, provided sufficient evidence that the item retrieved from the holster on Lugo's right hip was a firearm. Sergeant Dierks described it as a semiautomatic pistol that had live ammunition in its chamber and magazine. The item also had a visible firing pin. Sergeant Dierks explained the significance of the firing pin: "when the hammer hits [the firing pin], that firing pin will come out and nail the primer, which ignites the powder, which pushes the projectile, pushes it forward."

In denying Lugo's motion to strike the evidence, the court determined that the item was a firearm based on its own inspection of the item, video footage and photographs, and the officers' testimony. Indeed, firearms are "generally not so exotic" as to require "extensive or specialized

expertise" to "correctly identify" them. *Murray v. Commonwealth*, 71 Va. App. 449, 458 (2020). Virginia law does not support Lugo's contention that, to sustain a conviction under Code § 18.2-308.2, the firearm had to be operable and test-fired or examined and tested by the Department of Forensic Science. *See Jordan*, 286 Va. at 157 (holding that lay testimony that the object was a "Raven," which is a well-known firearm, was sufficient). Credible evidence supports the court's finding that the item retrieved from Lugo was a firearm.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*