# COURT OF APPEALS OF VIRGINIA

### Record No. 0546-25-3

JAMES LEE CECIL, JR.

v.

COMMONWEALTH OF VIRGINIA

Present: Judges O'Brien, Lorish and Senior Judge Humphreys

Opinion Issued May 12, 2026[*]

### FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M. D. Turk, Judge

(James Lee Cecil, Jr., on brief), *pro se*. Appellant submitting on brief.

(Jason S. Miyares,[1] Attorney General; Susan Hallie Hovey Murray, Assistant Attorney General, on brief), for appellee.

### MEMORANDUM OPINION
### PER CURIAM

It appears to the Court that the appellant's copy of the opinion rendered in this case on March 3, 2026, was mailed to an incorrect address for appellant. Accordingly, that opinion is withdrawn, the mandate entered on that date is vacated, and the following opinion is entered in lieu thereof:

Upon his conditional no contest pleas, the circuit court convicted James Lee Cecil, Jr., of carrying a concealed weapon as a convicted felon, possessing methamphetamine, and obstructing justice. Before entering his pleas, Cecil moved to suppress evidence collected during a traffic stop of his vehicle. The court denied this motion, and now Cecil appeals. Having examined the briefs

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a). Thus, we affirm.

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

On March 27, 2023, Virginia State Police Sergeant D.W. Hamrick was conducting speed surveillance when he recorded Cecil driving 46 miles per hour in a 35 mile-per-hour zone. Sergeant Hamrick pulled Cecil over and asked him where he was coming from and where he was going. Cecil responded that he was coming from his parents' house but declined to tell where he was going, stating that he did not want to incriminate himself. Sergeant Hamrick considered Cecil's comment unusual, testifying that "it was one of the oddest statements I [can] recall from a traffic stop."

Sergeant Hamrick ran Cecil's license and registration through Department of Motor Vehicles records and learned that Cecil's registration had expired. Further, upon searching the Virginia Criminal Information Network, Sergeant Hamrick discovered that Cecil was a known gang member. A dispatch officer alerted Sergeant Hamrick that Trooper J.A. Turner wanted to speak with him regarding Cecil and officer safety, having encountered Cecil before. Trooper Turner advised that when he had stopped Cecil "a few months" earlier, Cecil was in possession of a large

amount of methamphetamine.  Sergeant Hamrick spoke with Trooper Turner for approximately 30 seconds as he continued writing a summons.

Sergeant Hamrick noted a dark tint on Cecil's windows and used a tint meter in two spots to measure it.  When Sergeant Hamrick mentioned that he had spoken with Trooper Turner, Cecil immediately became agitated.  The meter indicated that the tint on Cecil's windows exceeded the lawful limit.  As Sergeant Hamrick worked on the three summonses, he called for a K-9 unit, based on the circumstances surrounding the stop, including the information from Trooper Turner and Cecil's statements about incriminating himself.

Eleven minutes after the initial stop, Deputy Cody Blankenship arrived with a drug-detecting dog.  At that point, Sergeant Hamrick documented his progress with the traffic stop: he took a picture showing that he had nearly completed the first of the three summonses.  Based on safety concerns, Deputy Blankenship asked Sergeant Hamrick to assist in removing Cecil from the car.  Due to Cecil's recalcitrance, officers needed "a little over one minute to get him to exit."

As Cecil got out of the car, Sergeant Hamrick saw a machete between the driver's door and the driver's seat.  Sergeant Hamrick also noticed that Cecil was carrying a pocketknife.  Based on Cecil's agitation and the concern for officer safety, Sergeant Hamrick handcuffed and detained Cecil and confiscated the machete.  He also called for a backup officer.

During the free-air sniff of Cecil's car, the drug-detecting dog alerted.  Deputy Blankenship explained that the driver's door window was still open at the time of the sniff.  The dog put his paws on the car and his nose through the open window; the dog never entered the car.  Based on the dog's positive alert, the police searched Cecil's car.  Sergeant Hamrick found a glass smoking device that contained methamphetamine residue.

In his motion to suppress all evidence derived from the encounter, Cecil first argued that the police impermissibly extended the traffic stop.  He emphasized Sergeant Hamrick's initial questions

about where he had come from and where he was going and the brief phone conversation with Trooper Turner. Cecil also asserted that the police impermissibly extended the stop by calling for the K-9 unit. Finally, he argued that Sergeant Hamrick unlawfully seized the machete he found in plain view inside Cecil's car. The court denied the motion, holding that Sergeant Hamrick did not prolong the stop and that the K-9 unit's presence at the scene was "contemporaneous with the officer's diligent pursuit of the mission for the stop." Further, the court found that the drug-sniffing dog did not impermissibly trespass upon Cecil's car and was not instructed to enter the car. Finally, the court found that the police permissibly seized the machete.

ANALYSIS

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

"The Commonwealth carries the burden of showing that a warrantless search and seizure was constitutionally permissible." *Jackson v. Commonwealth*, 267 Va. 666, 673 (2004). "However, a defendant must show, when viewing the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress evidence was reversible error." *Id.*

- 4 -

Cecil argues that the police impermissibly extended the length of the traffic stop. Sergeant Hamrick's inquiries about where Cecil had been and where he was going took mere seconds. Similarly, Sergeant Hamrick's phone conversation with Trooper Turner lasted approximately 30 seconds, and Sergeant Hamrick continued filling out a summons as they talked. A "traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015) (alteration in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Here, however, the questions and the call did not unnecessarily prolong the traffic stop because the officer had not completed the task of filling out the three summonses.

Similarly, the dog sniff did not impermissibly extend the stop. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* at 354 (quoting *Caballes*, 543 U.S. at 407). "Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* at 356 (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)). The safety precautions Sergeant Hamrick employed, such as calling for backup and removing Cecil from the car, were reasonable and did not unduly extend the lawful traffic stop. The drug sniff did not prolong the stop but, rather, occurred while officers were undertaking these safety precautions and was based on reasonable suspicion. *See id.* at 355 (allowing "unrelated checks during an otherwise lawful traffic stop" that do not prolong the stop and are based on "the reasonable suspicion" of other criminal activity "ordinarily demanded to justify detaining an individual"). The basis for this reasonable suspicion included Cecil's odd comment about not wanting to incriminate himself and Trooper Turner's previous encounter with Cecil in possession of drugs. The dog sniff was contemporaneous with the officers' diligent pursuit of the traffic stop's

mission and with their reasonable attention to safety concerns. *See id.* at 354-55. For these reasons, it was not plainly wrong for the court to find no impermissible delay to the traffic stop.

Cecil also contends that the police violated his rights by seizing the machete Sergeant Hamrick found in plain view inside the car. Sergeant Hamrick immediately saw the machete in the car within Cecil's reach as Cecil exited. "This Court has previously upheld the warrantless seizure of firearms in plain view from a vehicle when those firearms posed a potential threat to officer safety." *Moore*, 69 Va. App. at 38 (citing cases relying on the exigent-circumstances exception to the Fourth Amendment warrant requirement). Similarly, here, the readily available weapon presented a danger to the officers on the scene, and this exigent circumstance justified the seizure. Accordingly, we find no error in the trial court's denial of Cecil's motion to suppress.

CONCLUSION

For these reasons, we affirm the judgment.

*Affirmed.*

UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Lorish and Senior Judge Humphreys

JAMES LEE CECIL, JR.

v.     Record No. 0546-25-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
MARCH 3, 2026

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M. D. Turk, Judge

(James Lee Cecil, Jr., on brief), *pro se*.  Appellant submitting on brief.

(Jason S. Miyares,[1] Attorney General; Susan Hallie Hovey-Murray, Assistant Attorney General, on brief), for appellee.

Upon his conditional no contest pleas, the circuit court convicted James Lee Cecil, Jr., of carrying a concealed weapon as a convicted felon, possessing methamphetamine, and obstructing justice.  Before entering his pleas, Cecil moved to suppress evidence collected during a traffic stop of his vehicle.  The court denied this motion, and now Cecil appeals.  Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit."  *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).  Thus, we affirm.

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below."  *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

On March 27, 2023, Virginia State Police Sergeant D.W. Hamrick was conducting speed surveillance when he recorded Cecil driving 46 miles per hour in a 35 mile-per-hour zone. Sergeant Hamrick pulled Cecil over and asked him where he was coming from and where he was going. Cecil responded that he was coming from his parents' house but declined to tell where he was going, stating that he did not want to incriminate himself. Sergeant Hamrick considered Cecil's comment unusual, testifying that "it was one of the oddest statements I [can] recall from a traffic stop."

Sergeant Hamrick ran Cecil's license and registration through Department of Motor Vehicles records and learned that Cecil's registration had expired. Further, upon searching the Virginia Criminal Information Network, Sergeant Hamrick discovered that Cecil was a known gang member. A dispatch officer alerted Sergeant Hamrick that Trooper J.A. Turner wanted to speak with him regarding Cecil and officer safety, having encountered Cecil before. Trooper Turner advised that when he had stopped Cecil "a few months" earlier, Cecil was in possession of a large amount of methamphetamine. Sergeant Hamrick spoke with Trooper Turner for approximately 30 seconds as he continued writing a summons.

Sergeant Hamrick noted a dark tint on Cecil's windows and used a tint meter in two spots to measure it. When Sergeant Hamrick mentioned that he had spoken with Trooper Turner, Cecil immediately became agitated. The meter indicated that the tint on Cecil's windows exceeded the lawful limit. As Sergeant Hamrick worked on the three summonses, he called for a K-9 unit, based

on the circumstances surrounding the stop, including the information from Trooper Turner and Cecil's statements about incriminating himself.

Eleven minutes after the initial stop, Deputy Cody Blankenship arrived with a drug-detecting dog. At that point, Sergeant Hamrick documented his progress with the traffic stop: he took a picture showing that he had nearly completed the first of the three summonses. Based on safety concerns, Deputy Blankenship asked Sergeant Hamrick to assist in removing Cecil from the car. Due to Cecil's recalcitrance, officers needed "a little over one minute to get him to exit."

As Cecil got out of the car, Sergeant Hamrick saw a machete between the driver's door and the driver's seat. Sergeant Hamrick also noticed that Cecil was carrying a pocketknife. Based on Cecil's agitation and the concern for officer safety, Sergeant Hamrick handcuffed and detained Cecil and confiscated the machete. He also called for a backup officer.

During the free-air sniff of Cecil's car, the drug-detecting dog alerted. Deputy Blankenship explained that the driver's door window was still open at the time of the sniff. The dog put his paws on the car and his nose through the open window; the dog never entered the car. Based on the dog's positive alert, the police searched Cecil's car. Sergeant Hamrick found a glass smoking device that contained methamphetamine residue.

In his motion to suppress all evidence derived from the encounter, Cecil first argued that the police impermissibly extended the traffic stop. He emphasized Sergeant Hamrick's initial questions about where he had come from and where he was going and the brief phone conversation with Trooper Turner. Cecil also asserted that the police impermissibly extended the stop by calling for the K-9 unit. Finally, he argued that Sergeant Hamrick unlawfully seized the machete he found in plain view inside Cecil's car. The court denied the motion, holding that Sergeant Hamrick did not prolong the stop and that the K-9 unit's presence at the scene was "contemporaneous with the officer's diligent pursuit of the mission for the stop." Further, the court found that the drug-sniffing

dog did not impermissibly trespass upon Cecil's car and was not instructed to enter the car. Finally, the court found that the police permissibly seized the machete.

ANALYSIS

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

"The Commonwealth carries the burden of showing that a warrantless search and seizure was constitutionally permissible." *Jackson v. Commonwealth*, 267 Va. 666, 673 (2004). "However, a defendant must show, when viewing the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress evidence was reversible error." *Id.*

Cecil argues that the police impermissibly extended the length of the traffic stop. Sergeant Hamrick's inquiries about where Cecil had been and where he was going took mere seconds. Similarly, Sergeant Hamrick's phone conversation with Trooper Turner lasted approximately 30 seconds, and Sergeant Hamrick continued filling out a summons as they talked. A "traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015) (alteration in

original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Here, however, the questions and the call did not unnecessarily prolong the traffic stop because the officer had not completed the task of filling out the three summonses.

Similarly, the dog sniff did not impermissibly extend the stop. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* at 354 (quoting *Caballes*, 543 U.S. at 407). "Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* at 356 (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)). The safety precautions Sergeant Hamrick employed, such as calling for backup and removing Cecil from the car, were reasonable and did not unduly extend the lawful traffic stop. The drug sniff did not prolong the stop but, rather, occurred while officers were undertaking these safety precautions and was based on reasonable suspicion. *See id.* at 355 (allowing "unrelated checks during an otherwise lawful traffic stop" that do not prolong the stop and are based on "the reasonable suspicion" of other criminal activity "ordinarily demanded to justify detaining an individual"). The basis for this reasonable suspicion included Cecil's odd comment about not wanting to incriminate himself and Trooper Turner's previous encounter with Cecil in possession of drugs. The dog sniff was contemporaneous with the officers' diligent pursuit of the traffic stop's mission and with their reasonable attention to safety concerns. *See id.* at 354-55. For these reasons, it was not plainly wrong for the court to find no impermissible delay to the traffic stop.

Cecil also contends that the police violated his rights by seizing the machete Sergeant Hamrick found in plain view inside the car. Sergeant Hamrick immediately saw the machete in the car within Cecil's reach as Cecil exited. "This Court has previously upheld the warrantless seizure of firearms in plain view from a vehicle when those firearms posed a potential threat to officer

- 5 -

safety." *Moore*, 69 Va. App. at 38 (citing cases relying on the exigent-circumstances exception to the Fourth Amendment warrant requirement). Similarly, here, the readily available weapon presented a danger to the officers on the scene, and this exigent circumstance justified the seizure. Accordingly, we find no error in the trial court's denial of Cecil's motion to suppress.

CONCLUSION

For these reasons, we affirm the judgment.

*Affirmed.*